**HENDERSON v. MOORE et al.**

No. 2645.

Court of Civil Appeals of Texas.
Tenth District, Waco.

June 28, 1945.

Rehearing Denied July 19, 1945.

Judgment Affirmed Nov. 28, 1945.

P. M. Rice, of Hamilton, J. A. Johnson, of Stephenville, and S. R. Allen, of Hamilton, for appellant.

Gib Callaway, of Brownwood, for appellees.

HALE, Justice.

This is an appeal from a judgment of the District Court of Hamilton County denying an application for the probate of a will. The questions presented on the appeal are: (1) whether the District Court acquired jurisdiction to try the case; and if so, (2) whether any provision in the proposed will contravenes the law relating to perpetuities; and if so, (3) whether such unlawful provision or provisions renders the purported will void.

H. N. Moore, an elderly bachelor, executed the will on December 20, 1944 and departed this life twelve days later, leaving an estate of the estimated value of $50,000. Appellant was designated in the will as executor and as such he filed his application in the County Court of Hamilton County for its probate. Appellees are heirs at law of the deceased and as such they contested the application upon the grounds of undue influence, mental incapacity and the creation of perpetuities in the execution of the will. In the ·exercise of its lawful jurisdiction the County Court rendered judgment on January 24, 1945 granting the application and admitting the will to probate. Appellees gave proper notice of appeal from such judgment to the District Court, caused a good and sufficient appeal bond to be properly executed in an amount fixed by the County Judge and the bond so executed was expressly approved and filed by the County Clerk of Hamilton County on January 29, 1945.

The appeal bond and other original papers in the proceedings had in the County Court were filed in the District Court by the Clerk thereof on February 3, 1945. When the case was called for trial in the District Court on February 19th, appellee in that court (appellant here) presented his motion to dismiss the appeal upon the ground that the appeal bond had not been approved by the County Judge. Thereupon the District Court granted appellants in that court (appellees here) permission to secure

the approval of their bond by the County Judge who made and signed the following endorsement on the bond: "The foregoing bond is hereby approved by me, this the 19th day of February, 1945, but if it had been presented to me at the time it was filed I would have approved it." The District Court then overruled the motion to dismiss the appeal. After a hearing on certain exceptions and stipulations relating to the general issue of perpetuities, the court rendered judgment setting aside the prior judgment of the County Court and denying the application for probate. The action of the District Court in denying the application was based solely upon his holding that the purported will was void because in violation of the law against perpetuities.

Appellant says the County Clerk had no lawful authority to approve the appeal bond and his action in doing so was a nullity. He further asserts that the District Court had no authority in law to permit the County Judge to approve the bond after the expiration of fifteen days from the time when the County Court rendered its judgment admitting the will to probate. Hence, he contends that the District Court did not properly acquire jurisdiction to try the case.

Articles 3698 and 3699 of Vernon's Tex. Civ.Stats. are parts of Chapter 30, Title 54 of said statutes as revised in 1925. They deal with the right of appeal and the requisites of an appeal bond in the disposition of probate matters. Article 3698 provides in substance that any person who may consider himself aggrieved by any judgment of the County Court relating to estates of decedents shall have the right to appeal therefrom to the District Court of the County upon complying with the provisions of that chapter. Article 3699 provides in effect that the party so desiring to appeal shall, within fifteen days after such judgment shall have been rendered, file with the County Clerk a bond with two or more good and sufficient sureties, payable to the County Judge in any amount to be fixed by the County Judge, conditioned as therein required. Rule 332, Texas Rules of Civil Procedure contains substantially the same provisions as those contained in said Art. 3699. By the terms of the last-mentioned article as the same existed prior to the revision in 1925 it was expressly provided that such bond was to be approved by the County Clerk. How-

ever, we find no provision in the statutes or in the rules of civil procedure as they now exist which expressly authorizes or requires the County Clerk, the County Judge or any particular official to approve such bond.

Because there is no provision in Chapter 30, Title 54 of Vernon's Tex.Ann. Civ.Stats., or elsewhere in the existing statutes or rules of civil procedure, which expressly authorizes or requires any particular official to approve the appeal bond in probate matters on appeal from the County Court to the District Court, it appears to us that when an aggrieved party gives proper notice of such appeal, causes a good and sufficient bond to be properly executed in an amount fixed by the County Judge and files the same with the County Clerk within fifteen days after the rendition of such judgment, potential jurisdiction is thereby conferred upon the District Court to try the controversy de novo. Under such circumstances the act of the proper official in filing the bond constitutes the performance of a purely ministerial duty.

But if it should be held that the law by implication requires the express approval of such appeal bond, then we think the County Clerk is authorized by implication to so approve the same. Should any question or issue arise as to whether the bond tendered for filing was or is defective, either in form or substance, so as to require the exercise of discretion on the part of the County Clerk in filing or approving it, then the action of the Clerk in so filing or approving the bond is properly subject to judicial review. If it should be determined upon review by the District Court that such bond so filed or approved is defective in form or substance, then under the provisions of Art. 1840—A of Vernon's Tex.Ann.Civ.Stats., such Appellate Court may allow the bond to be amended by filing a new bond on such terms as the court may properly prescribe.

And so, even though the law by implication requires the express approval of such bond by the County Judge, we cannot say the District Court erred in permitting appellees to secure the approval of their bond by the County Judge under the circumstances shown by this record. King v. King, Tex.Civ.App., 91 S.W.2d 511, pt. 1 error dismissed; Grogan Manufacturing Co. v. Lane, 140 Tex. 507, 169 S.W.2d 141.

Therefore, we hold that the District Court lawfully acquired potential and actual jurisdiction to try this cause.

The law against perpetuities in this State is bottomed upon the provisions of Art. 1, Sect. 26 of the Constitution of Texas, Vernon's Ann.St., which reads as follows: "Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed, nor shall the law of primogeniture or entailments ever be in force in this State."

Although a perpetuity is not defined in the Constitution or Statutes of Texas, it is generally held to mean a limitation which takes the subject matter of the perpetuity out of commerce for a period of time greater than a life or lives in being, and 21 years thereafter, plus the ordinary period of gestation. 32 Words and Phrases, Perm.Ed., p. 176; 41 Am.Jur., p. 50, Sec. 3; 32 Tex.Jur., p. 830, Sec. 3; Neely v. Brogden, Tex.Com.App., 239 S.W. 192; Mayfield v. Parks, Tex.Civ.App., 57 S.W.2d 885.

The court further stated in the case of Neely v. Brogden [239 S.W. 193] supra: "In determining whether this period of time is transcended, the situation must be viewed as of the date the instrument becomes effective, that date being, in case of a will, the death of the testator; and when so viewed, if by any possible contingency a devise violates the rule, it cannot stand, and must be held void. Anderson v. Menefee, Tex.Civ.App., 174 S.W. 904, and cases there cited."

A limitation or restraint upon the power to alienate property removes it from the channels of trade and commerce to the extent of the restriction so imposed. The right and power of alienation is dependent primarily upon the status of title to and ownership of property, as distinguished from that of mere possession or right of possession. Consequently, a devise may be valid if title to the property devised is to become vested in the devisee at any time within a life or lives in being and 21 years plus the period of gestation, even though possession is postponed beyond that period. 32 Tex.Jur. p. 836, Sec. 9 and authorities. But if the title may not become vested or absolute in some person until the expiration of a more prolonged period, then the attempted disposition must be held invalid. 32 Tex.Jur., p. 835, Sec. 8; Clarke v. Clarke, 121 Tex. 165, 46 S.W.2d

658. When no life in being forms any part of the period of suspension or postponement in the vesting of title, the limit of time against perpetuities is 21 years. 41 Am.Jur., p. 63, Sec. 18.

As we understand the briefs of the respective parties they do not seriously question the correctness of the foregoing general pronouncements of law. However, appellant contends that the devises involved in the will under consideration do not violate the rules of law relating to perpetuities because he says the title to the devised property became vested in the devisees immediately upon the death of the testator and that possession only was postponed. In the alternative, he further contends that the entire will manifests testator's dominant purpose to divide his property equally between his kin of the whole and half blood and he says this clear and dominant intention should be given effect, even though it conflicts with the other provisions of the will relating to perpetuities.

In passing upon these contentions it must be borne in mind that the testator's intention is of paramount consideration. When ascertained, such intention must be effectuated, "unless it contravenes the public policy of the state or its established law." Hunt v. Carroll, Tex.Civ. App., 157 S.W.2d 429, 435; Id. 140 Tex. 424, 168 S.W.2d 238. As said by this court in the case of Henderson v. Stanley, Tex. Civ.App., 150 S.W.2d 152, 154: "It is the duty of the court, in arriving at such intention, to look alone to the language actually used and give effect to every part of the will, if such is legally possible or practicable. The presumption should be indulged that the testator did not intend to use any meaningless or superfluous words, but that he intended for every provision, clause or word in his will to have a meaning in the disposition to be made of his property. While no strained construction should be resorted to, yet the court should construe the instrument as a whole in keeping with its general intention and in such a way, if possible, as to bring every provision into harmony with each other. [Citing authorities.]"

The entire will here under consideration, with its formal parts omitted, is as follows:

"1. Having never married, it is my will and desire that all of my property, except small personal belongings that I may dis-

tribute among my kin and friends, shall eventually vest in the descendants of my brothers and sisters, but I expressly provide that my said property shall be kept intact, by my Executor herein named, (excepting such property as may be situated outside of Hamilton County) and said property shall be maintained and preserved by my Executor for a period of 25 years; during which time my Executor shall rent and lease the same as he may deem best; he shall pay all taxes and other proper charges; make repairs, and in general look after the best interest of my property, and shall, each year, pay to the persons entitled thereto their share of the net proceeds of such rentals, keeping a reasonable balance on hand for emergencies that may arise. The respective shares of net proceeds shall be in proportion to the recipients ownership of my said property, were the same vested in them at such times.

"2. I direct that my real estate, outside of the County of Hamilton, may be sold by my Executor upon the following conditions. I request the County Judge of Hamilton County, and the District Judge, exercising jurisdiction in Hamilton County, each to appoint a committee of one, who shall be men of sound judgment, and upon the advice of said Committee of two men my said Executor may convey any property outside of Hamilton County, for the consideration approved by said Committee, who shall sign the deed with said Executor for the purpose only of approving the same. The consideration of such sale shall be kept in some Bank, in Hamilton County, and invested by said Executor in Bonds, or other securities, of the United States of America and the income therefrom, whenever collected, shall be paid out by said Executor, as the rents and other income, are paid.

"3. My said Executor, or other person having charge of my estate, shall each year render a statement of all the receipt and expenditure which shall be filed in the office of the County Clerk of Hamilton County for the inspection of all concerned, but which need not be approved by the County Court or any one else.

"4. At the end of 25 years, if my estate can be partitioned among the persons then entitled thereto as descendants of my brothers and sisters, and half brothers and sisters, it is my wish that the same be done by agreement of all heirs; but if same cannot be done, then same shall be sold under orders of the District Court for the purpose of partitioning same. It is my wish that my estate not be closed hastily but care should be taken to secure an adequate price, and that the various heirs should be given an opportunity to purchase any parcels that they may desire, and to that end I suggest that different tracts or parcels may be sold to any heir, upon payment of one-half cash and the balance on time, not to exceed Five years, at the then customary rate of interest, a lien being retained to secure deferred payments.

"5. The persons that I desire to receive my property at the end of the above mentioned period, are the following:

"a. The Descendants of my brother, Lum Moore,

"b. The Descendants of my brother, Jack Moore,

"c. The Descendants of my brother Tom Moore, except his daughter, Azalee, who married John Boyd, or her descendants

"d. The Descendants of my brother Layfayette Moore,

"e. The Descendants of my half brother, George Moore,

"f. The Descendants of my half sister, Azalee Henderson,

"g. The Descendants of my half sister, Annie Barron, except Walter Barron, who shall receive nothing from my estate, nor shall his descendants.

"h. The Descendants of my half sister, Jennie, who married Fountain Jones.

"Each set of descendants shall participate equally in my estate, each set receiving one-Eighth (1/8) thereof, taking per stirpes, and not per capita.

"As to the share of annual payments that might have been paid to Azalee Boyd during her lifetime, I direct that the proceeds of such share shall be paid to John Boyd, her husband, as long as he may live, but at his death such payments shall cease and such share as Azalee Boyd might have inherited shall remain in my estate and be divided among my entire kin, taking under this Will. I particularly stipulate that nothing whatever be paid to Walter Barron out of my estate and such interest that he might have received shall be divided among all the other heirs, as in the case of Azalee Boyd.

64

"6. I hereby nominate and appoint my nephew, Paul Henderson to be Executor of this my last Will and he shall have the exclusive management and control of my estate for the period above named, or so long as the estate may remain undivided. He shall pay all debts that I may owe at the time of my death and collect all claims. I expressly direct that no proceedings be had in the courts in the administration of my estate other than to prove and record this Will and to return an inventory and appraisement of my estate and list of claims.

"In case of his death or failure or refusal to act I direct that the County Judge of Hamilton County appoint some prudent person, who has been a friend of myself and my family, to carry out the provisions of this Will, who shall give bond for at least the estimated annual receipts of my estate. Such person may sell the property, outside of Hamilton County, and may execute oil and gas leases under orders of the Probate Court, as in ordinary administrations."

We see no material question of ambiguity or conflict in the terms of this will. We find no provision in the same which indicates any intention on the part of the testator that the title to or possession of any of the devised property should vest in any of the devisees immediately upon his death. On the contrary, under all of the terms and provisions of the entire will it is quite clear to us from the language actually employed therein that it was the testator's dominant purpose and intention to require the executor to hold the corpus of the estate in his possession for a period of 25 years after the testator's death, the executor being authorized but not required to change the form of a part of the corpus of the estate, and at the expiration of such period of time the title to the devised property should then vest in the then existing descendants of testator's brothers and sisters of the whole and half blood, each set of such descendants then to participate equally in his estate, each set to take per stirpes and not per capita. In the light of the clear and unequivocal language used in the will we are of the opinion that the testator's intention is not subject to any other construction.

But if there was any material ambiguity or conflict in the terms of the will we think the same was removed by the undisputed parol testimony introduced by appellant over the objection of appellees. The record discloses that the will was typewritten except in the several places where the figures "25" appear, and that such figures were written in pencil. The parol testimony is to the effect that the typewritten provisions of the will were read to the testator and there was then some discussion about the 25 year provisions before the will was signed; that the testator then stated the 25 years was what he wanted and "that if some people got that they would run through with it, would not keep it"; that in such discussion the testator used the expression "would blow it in right away"; that the testator did not say anything in such conversation about giving his property to his relatives any sooner than 25 years; that after such discussion and the insertion of the figures "25" the will was signed; and that the will as signed was exactly the way the testator wanted it.

▇▇ Thus it is manifest, we think, from the four corners of the will, from the formal and technical language therein employed by the skilled scrivener, as well as from the informal and homely expressions used by the testator in discussing his approval of the will as drawn and signed, that it was the unequivocal intention of the testator to place a positive limitation of 25 years upon the right of the prospective devisees to alienate the property therein devised. No life in being formed any part of the period of postponement in the vesting of title under the proposed will. Since the title could not become absolute in any devisee until the expiration of more than 21 years after the death of the testator we hold that the proposed devises, if allowed to stand, would necessarily result in the creation of perpetuities within the meaning of the Constitution.

▇▇ Although the testator clearly intended that his property should eventually vest in equal portions in the eight sets of descendants of his brothers and sisters of the half and whole blood, we cannot say that such intended division of his property was paramount to his intention that the vesting of title thereto should be postponed. The only illegality in the will arises by reason of the use of the figures "25". But if the figures "25" be eliminated from the will, then the entire instrument becomes meaningless unless some other figure or figures be inserted in lieu thereof. If the figures "25" be eliminated and some other figure or figures be inserted in substi-

tution, then what figure or figures should be so substituted? The identity of the individual devisees may vary at the end of each year during the entire period of postponement. Any attempt to make such substitution at this time so as to carry out a supposed or inferred intention of the testator would, in our opinion, amount to nothing more than a resort to mere surmise or conjecture and would in legal effect constitute the writing of a will for the deceased, all for the purpose of circumventing a direct and peremptory inhibition of the Constitution against perpetuities. This the courts are not permitted to do. Philleo v. Holliday, 24 Tex. 38; Barmore v. Darragh, Tex.Civ.App., 231 S.W. 472, pt. 8; Watson v. Lindsley, Tex.Civ.App., 2 S.W.2d 339; McMullen v. Sims, Tex.Com.App., 37 S.W. 2d 141, pt. 4. Hence we are forced to the conclusion that the use of the figures "25" in the proposed will renders the same void because in violation of the Constitution and established rules of law relating to perpetuities. Anderson v. Menefee, Tex.Civ. App., 174 S.W. 904, (er. ref.); Brooker v. Brooker, 130 Tex. 27, 106 S.W.2d 247; Powers v. First Nat. Bank of Corsicana, 138 Tex. 604, 161 S.W.2d 273, pt. 1.

It follows from what has been said that all of appellant's points must be overruled. Accordingly, the judgment appealed from is affirmed.