PAUL HENDERSON, EXECUTOR, V. GEORGE MOORE, ET AL.

No. A-677. Decided November 28, 1945.
Rehearing overruled January 2, 1946.
(190 S. W., 2d Series, 800.)

*Allen & Allen* and *P. M. Rice,* all of Hamilton, *Hart & Brown* and *James H. Hart,* all of Austin, for petitioners.

The Court of Civil Appeals erred in holding that the will was void in its entirety, because it manifested estator's dominant purpose that the half blood should participate with the whole blood in the disposing of the property, and such intention will be given effect even though it conflicts with an illegal provision of the will. The will does not violate the rule concerning perpetuities because the title was vested in devisees immediately upon testator's death, and the possession only was postponed. Seay v. Cockerell, 102 Texas 280, 115 S. W. 1160; Clarke v. Clarke, 46 S. W. (2d) 658, 661; Frame v. Whittaker, 120 Texas 53, 36 S. W. (2d) 151, McIlvain v. Hockaday, 81 S. W. 54.

*Gib Callaway,* of Brownwood, *Critz, Kuykendall, Banknight, Mann & Stevenson,* of Austin, for respondent.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

H. N. Moore died January 1, 1945, leaving a written will, executed with the formalities required by law. The probate court admitted the will to probate, but on appeal to the district court that court declined to probate the will on the ground that it violated the rule against perpetuities. The judgment of the district court was affirmed by the Court of Civil Appeals. 189 S. W. (2d) 59.

The will is copied in full in the opinion of the Court of Civil Appeals. The material portions thereof for consideration here are as follows:

"1. Having never married, it is my will and desire that all of my property, except small personal belongings that I may distribute among my kin and friends, shall eventually vest in the

descedants of my brothers and sisters, but I expressly provide that my said property shall be kept intact, by my Executor herein named (excepting such property as may be situated outside of Hamilton County) and said property shall be maintained and preserved by my Executor for a period of 25 years; during which time my Executor shall rent and lease the same as he may deem best; he shall pay all taxes and other proper charges, make repairs, and in general look after the best interest of my property, and shall, each year, pay to the persons entitled thereto their share of the net proceeds of such rentals, keeping a reasonable balance on hand for emergencies that may arise. The respective shares of net proceeds shall be in proportion to the recipients ownership of my said property, were the same vested in them at such times.

&ast;    &ast;    &ast;    &ast;    &ast;

"4. At the end of 25 years, if my estate can be partitioned among the persons then entitled thereto as descendants of my brothers and sisters, and half brothers and sisters, it is my wish that the same be done by agreement of all heirs; but if same cannot be done, then same shall be sold under orders of the District Court for the purpose of partitioning same. It is my wish that my estate not be closed hastily but care should be taken to secure an adequate price,, and that the various heirs should be given an opportunity to purchase any parcels that they may desire, and to that end I suggest that different tracts or parcels may be sold to any heir, upon payment of one-half cash and the balance on time, not to exceed Five years, at the then customary rate of interest, a lien being retained to secure deferred payments.

"5. The persons that I desire to receive my property at the end of the above mentioned period, are the following:
"a. The Descendants of my brother, Lum Moore,
"b. The Descendants of my brother, Jack Moore
"c. The Descendants of my brother Tom Moore, except his daughter, Azalee, who married John Boyd, or her descendants
"d. The Descendants of my brother Layfayette Moore,·
"e. The Decendants of my half brother, George Moore,
"f. The Descendants of my half sister, Azalee Henderson,
"g. The Descendants of my half sister, Annie Barron, except Walton Barron, who shall receive nothing from my estate, nor shall his descendants.
"h. The Descendants of my half sister, Jennie, who married Fountain Jones.

"Each set of descendants shall participate equally in my estate,

each set receiving one-Eighth (1/8) thereof, taking per stirpes, and not per capita. * * *"

██ The rule against perpetuities renders invalid any will which attempts to create any estate or future interest which by possibility may not become vested within a life or lives in being at the time of the testator's death and twenty-one years thereafter, and when necessary the period of gestation. 41 Am. Jur. 50; 32 Tex. Jur. 834; 48 C. J. 937; Brooker v. Brooker, 130 Texas 27, 106 S. W. (2d) 247; Neely v. Brogden (Com. App.), 239 S. W. 192. When lives in being form no part of the period of suspension or postponement of the vesting of title, the limit of time against perpetuities is twenty-one years from the death of the testator. 48 C. J. 939. The rule is intended to prevent the taking of the subject matter of the perpetuity out of commerce or trade for the prohibited period. See authorities above.

There is no disagreement between counsel as to the scope of the rule against perpetuities. It is conceded that if under the will here under consideration the title to the property vested in the devisees immediately upon the death of the testator, the will is valid, even though the right of possession was postponed for more than twenty-one years; but if the will postponed the time of vesting of the title in the devisees for twenty-five years, then the will is invalid.

█ We are of the opinion that under the terms of the will it was not intended that the title to testator's property should vest in the devisees until twenty-five years after his death. The testator used rather clear language to convey such an intent. The will provides "* * it is my will and desire that all of my property * * *shall eventually vest* in the descendants of my brothers and sisters, but I expressly provide that my said property shall be kept intact, by my Executor * *, and said property shall be maintained and preserved by my Executor for a period of 25 years." (Emphasis ours.) It was further provided that the net proceeds of the rentals should be paid each year to the person entitled thereto "in proportion to the recipients ownership of my said property, *were the same vested in them at such times."* (Emphasis ours.) And in the fifth paragraph of the will it is provided "The persons that I desire to receive my property *at the end of the above mentioned period,* are the following: * *." naming as devisees the descendants of various brothers and sisters and half brothers and sisters. (Emphasis ours.) Under the terms of the will the property was to "eventually vest" in the descendants of his brothers and sisters. By this was meant that

it was to vest only upon the happening of the named event, that is, at the end of the twenty-five years.

Moreover, the fourth paragraph of the will provides, in substance, that at the end of 25 years" the estate is to be partitioned among "the persons *then* entitled thereto as descendants of my brothers and sisters, and half brothers and sisters." (Emphasis ours.) The bequest was to the *then* descendants — the descendants who would be living at the end of twenty-five years. The bequest was to a class which was subject to open to let in new-born members, and to exclude those who might die during the twenty-five-year period. Until the expiration of the period of twenty-five years no one could know who would *then* be the descendants of his brothers and sisters. In the meantime no one could make title to the property because it could not be known who would ultimately prove to be the beneficiaries. This would take the property devised by the will out of commerce for the period of twenty-five years, and would be in violation of the rule against perpetuities. 48 C. J. 964, 965; 41 Am. Jur. 96.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered November 28, 1945.

Rehearing overruled January 2, 1946.