**SCHMIDT et al. v. SCHMIDT et al.**

No. 12573.

Court of Civil Appeals of Texas.

Galveston.

Oct. 22, 1953.

Rehearing Denied Nov. 12, 1953.

Further Rehearing Denied Dec. 3, 1953.

L. F. Hardin, Rosenberg, and Walley & Robichau and W. G. Walley, Jr., Beaumont, for appellants.

Joerger, Lindsey & Lindsey, Rosenberg, S. G. Kolius and Thad Grundy, Houston, for appellees.

HAMBLEN, Chief Justice.

This suit was filed in the trial court by Joe A. Schmidt, individually and in several representative capacities hereafter set out, and by William F. Schmidt, who are appellants before this Court. The suit was brought to secure judicial construction of an instrument purporting to be and for convenience hereinafter referred to as a trust deed, and certain provisions of a will. Appellees, defendants below, together with appellants, constitute all of the grantors and beneficiaries under the trust deed, the legatees and devisees under the will and the heirs at law of Frank Schmidt, Sr., and his wife, Mary.

It is undisputed that Frank Schmidt, Sr., was married twice. His first wife died in 1890. By his first marriage he had one child, William F. Schmidt. Frank Schmidt, Sr.'s, second marriage was to Mary Schmidt who died in 1925. By this marriage he had nine children, all of whom, with the exception of a daughter, named Evelyne, survived their mother. Evelyne left surviving her a daughter, Mary Evelyne Spacek Chovanec and a son, Julius R. Spacek.

The trust deed which appellants sought to have construed was executed August 20, 1938, by Frank Schmidt, Sr., and all of the children by his second marriage (and their husbands and wives) except F. C. Schmidt, who was named as trustee, and Evelyne, who was dead. The two children of Evelyne did not join. By its terms for a valuable consideration it granted, sold and conveyed to F. C. Schmidt as trustee three tracts of land therein described for a term of twenty-five years but for the purpose and with the powers and duties to: (a) lease or rent the land for farming or grazing and collect the rents therefrom, (b)

lease for mineral purposes, sell royalty and minerals and receive the considerations therefor, (c) keep and maintain funds collected in a bank account, from which should be paid by him all taxes, insurance and costs of repairs and improvements, (d) after setting aside a reserve fund for all contingencies for the ensuing year to pay to each grantor annually his or her pro rata share of the accumulated fund.

The instrument also provided for the trustee to keep books of account, to pay himself a compensation, for the validation of oil and gas or other mineral leases, the terms of which should extend beyond the term of the trust, and further provided:

"2. This trust shall be binding upon our heirs, executors, administrators and assigns, and in the event of the death of either of us, our interests in the lands herein described shall be vested in said trustee until the expiration of the term hereof and subject to all of the terms and conditions herein contained and the said trustee acting hereunder shall account to our heirs, executors, administrators and assigns, the same as though we were still living."

Frank Schmidt, Sr., died March 18, 1945, survived by all of his children, except Evelyne, and by two grandchildren, the children of Evelyne. He left a written will which has been duly probated, the material portions of which, so far as this appeal is concerned, are as follows:

"2.

"It is my desire and I so direct that the following described property shall pass to and be vested in F. C. Schmidt, as Trustee, and shall ——— held by him as such Trustee for the benefit of my surviving heirs and shall be managed and controlled by him under the trust agreement heretofore made by me and my children and for the term of said trust agreement. The lands so devised to the said F. C. Schmidt as Trustee to be held by him are described as follows:

"(The description being of the same property described in the aforementioned trust deed.)

"The above tracts of land constitute a part of the community Estate of myself and deceased wife, and I own an undivided one-half interest therein, and it is the intention of this bequest to vest title in the Trustee of my interest in said land.

2.

"All the remainder of my estate whether real, personal or mixed, I bequeath unto my surviving children, share and share alike.

3.

"I hereby constitute and appoint F. C. Schmidt sole executor of this will and direct that no bond or security be required of him as executor. In the event of the death of said F. C. Schmidt, or his failure or refusal to act, either as Trustee or Executor hereunder, then I direct Joe A. Schmidt and Ernest J. Schmidt succeed said F. C. Schmidt as Trustee or executor in the respective order named and shall serve without bond or security as such."

By their answer appellees attacked the validity of the trust deed and that portion of the will wherein the testator made disposition of his property by reference to the trust deed. By cross-action appellees sought partition of the lands involved in the trust deed and the quoted portion of the will, an accounting from the trustee and certain ancillary relief.

F. C. Schmidt, having qualified as trustee under the trust deed and executor in the will, died March 13, 1950. Joe A. Schmidt qualified as successor trustee under the trust deed and as successor executor and trustee under the will and was so acting when this suit was instituted.

While the above described suit was pending, Joe A. Schmidt, in his representative capacity, filed suit against the appellee, Rosenberg State Bank, to recover the amount of a fund on deposit in a checking account. He also sought exemplary damages against the bank for alleged wrongful refusal to honor a check drawn on such account. The bank, by answer, filed a motion to consolidate the suit with the declaratory

judgment suit for a bill of interpleader and a general denial. The two causes were consolidated by the court and the trial proceeded before a jury. At the conclusion of appellants' case appellees moved the court for an instructed verdict, which was granted. Judgment was entered denying appellants all relief prayed for, declaring the trust deed and that portion of the will incorporating the trust deed by reference to be invalid, ordered an accounting by appellant, Joe A. Schmidt, as executor, and trustee, and ordered a partition of the property involved, including the fund on deposit in the appellee bank.

Appellants, in their brief assert ten points of error, upon which they rely for reversal of the judgment of the trial court. Basically and fundamentally, however, the answer to all of the asserted points depends upon the correctness of the trial court's ruling that the trust deed and the material portions of the will of Frank Schmidt, Sr., were invalid and illegal. Appellants complain of this ruling by their Points of Error Nos. 1 and 2. Appellees support the action of the trial court by their reply No. 1. Since the remaining points of error must in large measure stand or fall dependent upon the correctness of the trial court's ruling above mentioned, it is deemed appropriate to discuss the matters raised by appellants' points of error Nos. 1 and 2 before stating the other asserted points.

Appellees contend that the action of the trial court was correct upon either of two theories of law. First, they say the so-called trust deed did not create a trust at all but merely a revocable agency or power of attorney, and, second, they say that the trust deed and those portions of the will based thereon violate the provisions of Art. 1, § 26 of the Constitution of the State of Texas, Vernon's Ann.St.; otherwise known as the Rule Against Perpetuities.

Appellees' first theory is based upon the proposition which they assert to be the law in this State that a transfer of property purportedly in trust which fails to divest the transferor of beneficial title is inoperative to create a "trust" but simply constitutes the transferee a nominal "trustee," an agent for the transferor, and that such agency is void unless "coupled with an interest," revocable pending the decease of the principal and revoked ipso facto by his decease. In support of this proposition appellees cite four decisions by appellate courts of this State. These decisions are: Peterson v. Weiner, Tex.Civ.App., 71 S.W. 2d 544, writ refused; Chaison v. Chaison, Tex.Civ.App., 154 S.W.2d 961, writ refused; Benavides v. Laredo National Bank, Tex.Civ.App., 91 S.W.2d 372; Fleck v. Baldwin, 141 Tex. 340, 172 S.W.2d 975, affirming the Galveston Court of Civil Appeals' opinion reported in 168 S.W.2d 904.

A careful examination of these authorities fails to support the proposition advanced by appellees. Each of the cited cases involves the question of whether or not certain acts by a principal constituted a "gift inter vivos" or simply an "agency." It is true that in each of the cited cases the court held that no gift was made but in no case does the court support its action upon the broad statement contained in appellees' proposition nor does the court infer such proposition to be a correct statement of the law.

It is possible that the inaccurate citation of the listed authorities by appellees in support of their proposition resulted in part from the fact that in the cited cases the court was dealing with purported gifts of personal property. The language used by the courts in discussing the questions there involved might, upon casual reading, seem to lend support to appellees' proposition. For instance, in Benavides v. Laredo National Bank, the court says [91 S.W.2d 374]: " * * * 'Until a donor has divested himself absolutely and irrevocably of the title, dominion, and control of the subject of the gift, he has power to revoke it.' 28 C.J. 650, 651, § 46."

Similar expressions may be found in each of the cases relied upon by appellees. No purpose would be served by reviewing each of them. They are not factually analogous to the case at bar; nor do they involve the same principle of substantive law.

None of those cases is authority for the proposition that the owner of land may not convey the legal title thereto to another person and retain in himself the equitable or beneficial title. The right to do this has been recognized from the earliest decisions of the courts of England, from which our law of property is in large part derived. In fact so prevalent did the custom become in that country that the parliament, in order to restore to the crown the revenues formerly obtained from fines and taxes levied on the exchange of the legal title or "seizin" to land, passed the famous Statute of Uses. That statute undertook to execute use estates by providing that whoever should be vested with the use (i. e., equitable) estate in land should henceforth be seized of such land (i. e., vested with legal title) thus restoring to the crown the revenues of which it had been deprived by the creation of uses. But even if it be contended that by the adoption of the common law of England we have made the Statute of Uses a part of our law, an examination of the early English authorities will disclose that that statute was construed by the courts to have application only to conveyances of the bare legal title, the owner retaining all other incidents of ownership to himself and to have no application to so-called active uses in which the holder of the legal title is charged with the performance of specified duties and obligations with respect to the land. In fact, it is from the decisions of the Chancery Courts of England in cases involving such active uses that our law of modern trusts is largely derived.

Except where limited by statute, the right of the owner of property to convey the legal title to another in trust for himself has been consistently recognized by authorities from every jurisdiction. Without burdening this opinion with extensive citation of authorities we quote the following: 54 Am. Jur., page 117, par. 138: "The trustor may be the sole or one of the beneficiaries of a trust but one cannot create a trust in his own favor that is free from liability for his debts or torts."

From the American Law Institute, Restatement of the Law of Trusts, Vol. 1, Sec. 114, the following:

"The settlor of a trust may be one of the beneficiaries or the sole beneficiary."

In the comment under this section, the last cited authority notes that in some states there are statutes which provide that a transfer in trust for the benefit of the settlor is void. It is interesting to note that Texas is not included among such States. To the contrary Art. 7425b–7 of the Revised Civil Statutes of Texas, Vernon's Ann.Civ.St., being that portion of the Texas Trust Act which deals with the methods by which trusts may be created, provides: "B. A written transfer inter vivos by the owner of property to another person as trustee for the transferor or for a third person or persons".

An examination of the instrument involved in the case under consideration discloses that the owners undertook thereby to convey the legal title to the property involved to F. C. Schmidt as trustee. The instrument contains a granting clause, an habendum clause and a warranty clause, all in form sufficient under our law to transfer legal title. They expressly provided that such legal title should vest in the trustee or his successor provided for for a term of twenty-five years, thus denying to themselves all power of disposition of such legal title for that term. They then impose upon the trustee and his successor certain duties and obligations and instruct him to pay to them the net benefits derived from the land after performing such duties and obligations. Thus, they have created a typical active trust perfectly legal and valid under our law.

We turn now to appellees' second ground of attack upon the aforesaid instruments, that is, that their provisions violated the rule against perpetuities and are, therefore, void and invalid. In support of this proposition appellees cite Anderson v. Menefee, Tex.Civ.App., 174 S.W. 904, and Henderson v. Moore, 144 Tex. 398, 190 S.W.2d 800, and several cases from other jurisdictions.

Before considering these authorities and their application to the case under consideration, it might be well to set forth the following general principles.

■ A perpetuity has been defined as a limitation which takes the subject matter of the perpetuity out of commerce for a period of time greater than a life or lives in being and twenty-one years thereafter plus the ordinary period of gestation. Neely v. Brogden, Tex.Com.App., 239 S.W. 192.

■ When lives in being form no period of suspension or the postponement of the vesting of title, the limit of time against perpetuity is twenty-one years from the death of the testator. Henderson v. Moore, 144 Tex. 398, 190 S.W.2d 800.

■ The rule requires that the situation be viewed as of the date the instrument becomes effective and "when so viewed, if by any possible contingency a devise (here grant) violates the rule, it cannot stand, and must be held void." Bryson v. Connecticut General Life Insurance Company, Tex.Civ.App., 196 S.W.2d 532, 542.

■ And, it is also well established that the fact that the legal title is vested in trustees with full discretion as to the application of the income or the corpus to the uses of the beneficiary during the trust period does not militate against the immediate vesting of the beneficial (equitable) title in the beneficiary. Rust v. Rust, 147 Tex. Civ.App. 181, 211 S.W.2d 262.

■ We have held that the trust deed here involved had the effect of placing the legal title in trustees for a term of twenty-five years and the beneficial or equitable title in the grantors. It now becomes necessary to consider whether such beneficial or equitable title in the grantors was vested or contingent. If vested, the beneficiaries would have full power of alienation and the property is not taken out of commerce, therefore the rule is not violated. The instrument must be viewed as of its effective date, August 20, 1938. Whether or not the beneficial title vested depends upon the intent of the conveyors determined by the language employed in the conveyance.

■ After carefully considering the instruments here dealt with in the light of the authorities cited, we take the view that the beneficial or equitable title to the property conveyed vested immediately upon the effective date of the instrument in the persons for whose benefit the trust was created, namely the grantors. In the instrument the word "vest" is used only in connection with the grant of the legal title to the trustees. In this respect does the instrument here considered differ from the instruments discussed in Anderson v. Menefee and Henderson v. Moore, and because of that difference those cases are distinguishable from the case at bar.

In both of the cited cases the court, in holding that the beneficial title did not vest, points to words in the instrument evidencing an intent on the part of the grantor that such beneficial title not vest. The following quotation from the opinion by Chief Justice Alexander in the case of Henderson v. Moore will clearly illustrate the reasons for his conclusions [144 Tex. 398, 190 S.W. 2d 801]:

"We are of the opinion that under the terms of the will it was not intended that the title to testator's property should vest in the devisees until twenty-five years after his death. The testator used rather clear language to convey such an intent. The will provides ' * * * it is my will and desire that all of my property * * * *shall eventually vest* in the descendants of my brothers and sisters, but I expressly provide that my said property shall be kept intact, by my Executor * * *, and said property shall be maintained and preserved by my Executor for a period of 25 years.' (Emphasis ours.) It was further provided that the net proceeds of the rentals should be paid each year to the person entitled thereto 'in proportion to the recipients ownership of my said property, *were the same vested in them at such times.*' (Emphasis ours.) And in the fifth paragraph of the will it is provided 'The persons that I desire to receive my property *at the end of the above*

*mentioned period,* are the following: \* \*,' naming as devisees the descendants of various brothers and sisters and half brothers and sisters. (Emphasis ours.) Under the terms of the will the property was to 'eventually vest' in the descendants of his brothers and sisters. By this was meant that it was to vest only upon the happening of the named event, that is, at the end of the twenty-five years."

No such words appear in the instrument here considered. A well established rule of construction which might be applicable here is that rule which states that where doubt or ambiguity exists, the law favors that construction which results in the earliest vesting of the greatest estate. However, without resorting to this rule of construction, we feel that a careful analysis of the instrument indicates no intention on the part of grantors ever to divest themselves of the beneficial title to their property. On the other hand, the beneficial or equitable title was retained by them to be freely devised, alienated or inherited by their heirs, subject only to the trust which they had created.

From paragraph numbered 2 of the instrument, hereinabove quoted in full, the following words are significant: "\* \* \* in the event of the death of either of us, \* \* \* said trustee acting hereunder shall account to our heirs, executors, administrators and assigns, \* \* \*."

The use by the grantors of the words "heirs, executors, administrators and assigns" clearly indicates their intent that the equitable title which they retained should pass by descent and distribution, or by devise, or by inter vivos grant or other alienation.

■ Patently it cannot be said that an estate which is descendible, devisable, or alienable is taken out of commerce within the meaning of the recognized definition of a perpetuity heretofore stated.

From the foregoing discussion of appellants' points of error Nos. 1 and 2, it is apparent that this Court feels that the trial court erred and that the case was tried up-

on an incorrect theory of law. By their remaining points of error, with the exception of No. 7, which will be hereafter discussed, appellants complain of action of the trial court which, if we are correct in our holding on appellants' points of error Nos. 1 and 2, must as a logical consequence be held to be erroneous. However, by their pleadings appellees raised issues of mismanagement and waste alleged to have been committed by appellant, Joe A. Schmidt, for which they sought an accounting, removal of such trustee, or, alternatively, that he be required to make bond, and other relief. Because of the theory upon which this case was tried, which we have held to be erroneous, the issues thus raised were not tried. For that reason, it will be necessary to remand the case for retrial upon such issues. In view of such retrial, it is deemed proper that we pass upon the error asserted by appellants in their point of error No. 7, which has not been previously disposed of.

■ By point No. 7 appellants complain that the trial court erred in failing to find and determine that under the terms of the trust deed and the will upon the death of F. C. Schmidt, the original trustee, Joe A. Schmidt became sole successor trustee. We agree with appellants in this contention. The material part of the trust deed provided:

"1. In the event of the death of said F. C. Schmidt, or his failure or refusal to act hereunder, or his removal from the State of Texas, at any time during the term of this agreement, then Joe A. Schmidt and Ernest J. Schmidt shall succeed him as trustee hereunder in the order named and shall be vested with all the powers and subject to all the limitations herein contained."

Paragraph 3 of the will has been hereinabove set forth.

We feel that the language quoted indicates clearly the intent on the part of the grantors and the testator respectively, that upon the death of F. C. Schmidt, or his failure or refusal to act, that Joe A. Schmidt should succeed him as sole trustee or executor and that in the event of the

death of Joe A. Schmidt or his failure or refusal to act, Ernest J. Schmidt should succeed him as sole trustee or executor.

For the reasons outlined in the foregoing opinion, the judgment of the trial court is reversed and the cause remanded.

### On Motion for Rehearing

Appellees, without conceding the correctness of this Court's conclusions, except for the purpose of their motion for rehearing, now insist that in view of this Court's holding it should now proceed to: (1) render judgment in favor of appellees, Mary Evelyne Spacek Chovanec, Julius R. Spacek and Ernest Schmidt in his capacity as administrator of the estate of F. C. Schmidt, deceased, partitioning their undivided interest in the property and ordering the sale thereof by a receiver, (2) affirm the judgment of the trial court denying appellant, Joe A. Schmidt, any recovery and damages against appellee, Rosenberg State Bank, (3) affirm the judgment of the trial court in directing Joe A. Schmidt as trustee to render an accounting to appellees of the administration of his trust. All of these issues the appellees now contend were completely tried; are not dependent for their determination on the validity or invalidity of the trust deed and will; and by so rendering judgment this Court will be "rendering that judgment which the trial court should have rendered" within the meaning of Rule 434 T.R.C.P.

With this contention we do not agree. Since Mary Evelyne Spacek Chovanec and Julius R. Spacek were not parties to the trust deed, their right to partition of their interest is conceded. However the finding by the trial court that the property was not susceptible of partition in kind was made upon the erroneous assumption that the entire property involved must be partitioned among all of the litigants before the trial court. From such a finding it does not necessarily follow that the undivided interest of these two appellees may not be carved out of the property, leaving the remainder thereof intact and subject to the trust. The right of the administrator of the estate of F. C. Schmidt, deceased, to insist on partition depends upon the necessity thereof for the purpose of properly administering the estate, as to which the record is silent. The heirs of F. C. Schmidt, in whom the right to partition subject to administration would otherwise exist, are not determined by the trial court. The right of the appellees to require Joe Schmidt to render an accounting other than that provided for under the terms of the trust instrument, and the right of Joe Schmidt to recover damages against the bank depend upon the determination by the trial court of facts of mismanagement, waste, bad faith and other elements raised by the pleadings but not determined by the trial court because of the erroneous theory that no trust in fact existed.

It thus appears that the right to the relief which appellees now seek depends upon fact issues which cannot be determined in the present state of the record and which should in any event be first passed upon by a court of original jurisdiction before the jurisdiction of an appellate court to review such determination can be invoked.

Accordingly, the cause must be remanded generally for retrial of those issues in accordance with our original opinion.

Appellees' motion for rehearing is refused.