Clinton **FOSHEE** et al., Appellants,

v.

**REPUBLIC NATIONAL BANK OF DALLAS, Trustee, Appellee.**

No. 1304.

Court of Civil Appeals of Texas, Tyler.

May 15, 1980.

Robert H. Bezucha, Carter, Jones, Magee, Rudbery, Moss & Mayes, Dallas, for appellants.

Bruce W. Bowman, Jr., Turner, Rodgers, Sailers, Jordan & Calloway, Dallas, Amie

Rodnick, Asst. Atty. Gen., Austin, for appellee.

MOORE, Justice.

This is an appeal from a summary judgment. Appellee, Republic National Bank of Dallas (Republic), brought this suit to enforce a $40,000 testamentary bequest made by Bernice Schlosberg to the Hillcrest Mausoleum Special Gifts Trust Fund, of which Republic National Bank is the trustee. The suit was brought against appellants, Clinton and Mary Foshee, the co-independent executors of Mrs. Schlosberg's will, because of appellants' refusal to pay the bequest. Appellants answered and claimed that such bequest, as well as the Hillcrest Mausoleum Special Gifts Trust Fund, is unconstitutional because both documents violate the rule against perpetuities as provided in Article 1, section 26 of the Texas Constitution. The Attorney General of Texas was joined as a party defendant, because a charitable trust was alleged to be involved. Both appellants and appellee moved for summary judgment. After a hearing, the trial court granted Republic's motion for summary judgment but denied the motion of appellants. The order recites that judgment was rendered in favor of Republic for the sum of $40,000 plus prejudgment interest at the legal rate of six percent per annum from March 13, 1975, until February 1, 1979 (the date of judgment), and interest thereafter at the rate of nine percent per annum. From this judgment appellants perfected this appeal.

We affirm.

Before her death, the testatrix purchased a room in the Hillcrest Mausoleum which contained five crypts. Three of the crypts were purchased for the use of her family and the remaining two crypts were transferred to appellants, Clinton and Mary Foshee, by gift. The parties stipulated that the testatrix died on December 28, 1972, and that appellants were confirmed as independent executors of her estate and have refused to turn over the $40,000 bequest to Republic as trustee of the Hillcrest Mausoleum Special Care Trust Fund. Under the terms of her will the testatrix made the following bequest:

I give, devise and bequeath the sum of Forty Thousand Dollars ($40,000.00) in cash to Republic National Bank of Dallas, Texas, in trust, as Trustee of that certain Trust created on May 19, 1948, by and between Hillcrest Mausoleum, Inc. and Republic National Bank of Dallas, known as "Hillcrest Mausoleum special Gifts Trust Fund," such sum to become a part of said Trust Fund and to be administered in perpetuity as a part thereof and under the terms and provisions of said Trust indenture. I direct that the entire income, or the maximum amount of such income that is permitted under the laws of the State of Texas, from this gift, be expended for keeping, beautifying, and for the purchase of flowers for the burial space of my mother Sallie Alwida Schlosberg, my brother Sylvan S. Schlosberg and myself in the room which I own in Hillcrest Mausoleum. I further direct that flowers be purchased from this income and placed in, on or around said room weekly or at least semi-monthly depending upon the amount of income available for such purpose. The remainder of such income, if any, after expending the maximum amount allowed by the laws of this state for the purpose aforesaid shall be devoted to and spent for the general upkeep and beautification of the entire Mausoleum.

The Mausoleum Special Gifts Fund in which Republic was named as trustee was set up in 1948 by Hillcrest Mausoleum, a corporation, when the public mausoleum was constructed in Hillcrest Memorial Park in Dallas, Texas. The trust indenture provides that the principal of the trust shall be held in perpetuity. It further provides:

The Corporation or any other person, firm or corporation, may hereafter make gifts to this trust fund either for the benefit of the entire Mausoleum or for the special care and beautification of a particular crypt or crypts, vault, room or space therein. All special gifts to this Trust Fund not specifically conditioned

for the maintenance and care of designated crypts, vaults, or space shall be deemed to be for the maintenance of the entire Mausoleum; and all gifts conditioned for the maintenance of particular crypts, vaults or space shall nevertheless be deemed to be for the use of the entire Mausoleum to the limited extent required in that regard, by Article 912, et seq., Revised Statutes of Texas (1925) and any applicable amendments thereto . . . All gifts conditioned for the special care and beautification of a particular crypt or crypts, room or space shall be treated not as separate trusts and may be co-mingled with any and all other funds the subject matter of this trust, but separate accounts shall be kept by the Hillcrest Mausoleum, properly designating the particular crypt or room to which applicable, so that the income therefrom shall be used as directed by the instrument of gift.

Under their first point of error, appellants assert that the trial court erred in granting a summary judgment in favor of Republic National Bank. Under the second, third, and fourth points, appellants specifically assert that both the provision in the Schlosberg will and the trust creating the Mausoleum Special Gifts Fund, are unconstitutional because both instruments violate the rule against perpetuities. Appellants further urge that if the first paragraph of article 912a–18 of the Texas Revised Civil Statutes allows the establishment of a perpetual trust for the repair and maintenance of a private burial lot, then the statute is unconstitutional as a violation of the rule against perpetuities.

Article I, section 26 of the Texas Constitution provides that "[p]erpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed . . . ."

It is settled law in this state that the rule against perpetuities renders invalid any will which attempts to create any estate or future interest which by any possibility may not become vested within a life or lives in being at the time of the testator's death and twenty-one years thereafter, and when necessary the period of gestation. *Kettler v. Atkinson*, 383 S.W.2d 557, 560 (Tex.1964), *quoting Henderson v. Moore*, 144 Tex. 398, 190 S.W.2d 800, 801 (1946). It is likewise settled law that the rule against perpetuities also applies to trusts, and a perpetual trust of indefinite duration is void. *Carr v. Jones*, 403 S.W.2d 181, 182 (Tex.Civ.App.—Houston 1966, writ ref'd n.r. e.); *Atkinson v. Kettler*, 372 S.W.2d 704, 711 (Tex.Civ.App—Dallas 1963), *aff'd* 383 S.W.2d 557 (Tex.1964); *Moore v. Sellers*, 201 S.W.2d 248, 251 (Tex.Civ.App.—San Antonio 1947, writ ref'd). If, however, the trust is established for charitable purposes, the constitutional inhibition against perpetuities does not apply. *Boyd v. Frost National Bank*, 145 Tex. 206, 196 S.W.2d 497, 505 (1946); *Atkinson v. Kettler*, 372 S.W.2d 704, 713 (Tex.Civ.App.—Dallas 1963), *aff'd* 383 S.W.2d 557 (1964); *Rissman v. Lanning*, 276 S.W.2d 356, 358 (Tex.Civ.App.—Austin 1955, no writ). Generally, a perpetual trust for the upkeep of a private burial plot is not considered to be for charitable purposes. *See McIlvain v. Hockaday*, 36 Tex.Civ.App. 1, 81 S.W. 54 (1904, writ ref'd); Annot., 47 A.L.R.2d 596 (1956); Bogert, *The Law of Trusts and Trustees* section 377 (1977); Restatement of Trusts (Second) section 374 Comment h (1959). In the absence of a statute declaring such trusts to be charitable in nature, such trusts are generally held to be void and unenforceable. The rule prohibiting the establishment of a trust for the maintenance and repair of a private burial plot or monument has led to the enactment of statutes in many jurisdictions making such trust valid and providing for its enforcement. *See* Annot., 47 A.L.R.2d 596, 611 (1956); Bogert, *The Law of Trusts and Trustees* section 377, at 166–74 (1977).

The primary question in the present case is whether our statutes provide a method by which a donor may establish a perpetual trust to embellish a private cemetery plot without violating the rule against perpetuities.

In Texas, perpetual care cemeteries are regulated by article 912a sections 1 through

34. Section 15 provides that every cemetery association operating a perpetual care cemetery shall establish, with a trust company or bank with trust powers, an endowment fund of which the income only can be used for general perpetual care of its cemetery and to place its cemetery [1] under perpetual care. Section 15 provides that the net income arising therefrom shall be used solely for the general care and maintenance of the property entitled to perpetual care in the cemetery. Section 15 further provides:

A cemetery association which has established a perpetual care fund may also take, receive, and hold therefor and as a part thereof or as an incident thereto any property, real, personal or mixed, bequeathed, devised, granted, given or otherwise contributed to it therefor.

The perpetual care trust fund authorized by this Section and all sums paid therein or contributed thereto are, and each thereof is hereby, expressly permitted and shall be and be deemed to be for charitable and eleemosynary purposes. Such perpetual care shall be deemed to be a provision for the discharge of a duty due from the person or persons contributing thereto to the persons interred and to be interred in the cemetery and likewise a provision for the benefit and protection of the public by preserving and keeping cemeteries from becoming places of disorder, reproach, and desolation in the communities in which they are situated. No payment, gift, grant, bequest, or other contribution for such general perpetual care shall be or be deemed to be invalid by reason of any indefiniteness or uncertainty of the persons designated as beneficiaries in the instruments creating said trust, nor shall said fund or any contribution thereto be or be deemed to be invalid as violating any law against perpetuities or the suspension of the power of alienation of title to property.

Pursuant to the foregoing statute, the Hillcrest Mausoleum, a corporation, established an endowment fund and appointed Republic as the trustee, thereby placing its mausoleum cemetery under perpetual care. Thus, the mausoleum became a perpetual care cemetery with a perpetual fund.

Section 18 is titled "Special care." The first paragraph [2] of this section reads, in part, as follows:

The trustee of any cemetery perpetual care fund may also take and hold any property bequeathed, granted, or given to it in trust to apply the principal, or proceeds, or income therefrom to either or all of the following purposes: To the improvement or embellishment of such cemetery, or any part thereof, . . . for the special care or ornamenting of any burial plot, lot, section or building or any portion thereof in said cemetery or to any other purpose or use not inconsistent with the purpose for which such cemetery was established or is being maintained. Not exceeding seventy-five (75) per cent of the proceeds or income therefrom shall be devoted to keeping up and beautifying the private blocks, lots or structures for the upkeep of which the bequest, grant, or gift is made. At least twenty-five (25) per cent of such proceeds or income shall be devoted to the general upkeep and beautifying of the cemetery in which such lots, blocks, or structures are located.

■ It is a settled rule of statutory interpretation that statutes which are involved with the same general subject matter have the same general purpose and are considered as being *in pari materia* though they contain no reference to one another and though they were passed at different times or at different sessions of the legislature. The purpose of the *pari materia* rule

1. Section 1 provides:
    The term "cemetery", within the meaning of this title, is hereby defined as a place dedicated to and used and intended to be used for the permanent interment of the human dead. It may be either a burial park, for earth interments; a mausoleum for vault or crypt interments, a crematory, or crematory and columbarium for cinerary interments, or a combination of one or more thereof.

2. All references hereinafter made to section 18 are confined to the first paragraph thereof.

of construction is to carry out the full legislative intent. *See* 53 Tex.Jur.2d *Statutes* sec. 186–88 (1964). Since both section 15 and section 18 of the cemetery statutes deal with cemetery perpetual care funds, they are to be taken and construed together in order to carry out the legislative intent and produce a consistent and harmonious system.

Section 15 authorizes the establishment and maintenance of a perpetual care cemetery and directs the establishment of a perpetual care trust fund. Section 15 requires that a portion of the funds received from the sale of the crypts in the mausoleum cemetery be deposited in the mausoleum's perpetual care trust fund and that such funds be used solely for the general care and maintenance of the mausoleum. The funds garnered from that source are sometimes referred to as statutory perpetual care funds and must be kept separate and used solely for the general care and upkeep of the cemetery (mausoleum) as a whole. There is nothing in section 15, however, prohibiting the trustee of the perpetual care fund from taking and holding special care funds donated under the provisions of section 18.

■ Section 18 authorizes the trustee of any perpetual care fund created under section 15 to take and hold any property bequested or given to the perpetual care fund by a donor for the limited purpose of ornamenting or embellishing the donor's private burial plot. Consequently, any special care funds bequested to the trustee of an established perpetual care fund become a part of the perpetual care trust fund of the cemetery or mausoleum established under section 15. The legislature made it clear, however, that depending on the wishes of the donor, not less than twenty-five percent of the special care funds were to be devoted to the general upkeep and beautifying of the cemetery or mausoleum as a whole and the remaining seventy-five percent could be used by the trustee as directed by the donor to the embellishment of the donor's private burial space. It thus seems clear that the legislature intended that the trustee of the perpetual care fund was to take and hold the special care funds and was authorized to use the special care funds under the guidelines set forth in section 18. Once the special care funds reach the hands of the trustee, such funds become a part of the perpetual care trust fund. In view of the legislative declaration in section 15 that the perpetual care trust fund and all sums paid therein or contributed thereto are, and each thereof shall be deemed to be for charitable and eleemosynary purposes, we are of the opinion that the legislature intended to exempt special care funds from the rule against perpetuities once such funds come into the hands of the trustee of the perpetual care fund.

■ In the instant case, Mrs. Schlosberg, the testatrix, bequeathed the special care funds to Republic as trustee. At the time of her death, Republic had been duly appointed by the mausoleum corporation as the trustee of the mausoleum perpetual care trust as required by section 15. By a separate trust indenture, the mausoleum corporation had also appointed Republic as trustee for the purpose of holding funds given in trust to be used in perpetuity to embellish private burial places in the mausoleum. While the testatrix willed the special care funds to Republic as trustee of Hillcrest Mausoleum Special Gifts Trust Fund rather that to Republic as trustee of the mausoleum's perpetual care fund, both the will and special gifts trust indenture showed that the parties were endeavoring to comply with article 912a, *et seq.* The method by which the special care funds eventually reached the trustee of the mausoleum's perpetual care funds by the way of the special gifts trust indenture is not significant. It is only significant that the special care funds reached the hands of the trustee of the mausoleum's perpetual care fund. Thereafter such funds must be deemed charitable by legislative mandate.

Appellants' argument that section 18 of the statute was designed to allow a bequest for special care only so long as the bequest was not in violation of the rule against perpetuity is not convincing. In this con-

nection appellants take the position that section 18 must be construed alone without reference to section 15. Hence they argue that since nowhere in section 18 does the legislature declare that a special care bequest is deemed to be charitable, any special care bequest in perpetuity is void. We reject the notion that section 18 must be construed in a vacuum. As pointed out before, the first sentence in section 18 provides a method by which special care funds may be funnelled into the perpetual care trust fund established under section 15. The testatrix bequeathed the special care funds in trust to Republic as trustee. At the time of her death, Republic was the trustee for the mausoleum's perpetual care fund. As such, Republic was authorized to take and hold special care funds donated by the testatrix irrespective of whether the funds came to it directly or by way of the Hillcrest Mausoleum Special Gifts Trust Fund. It appears that the creation of the separate trust indenture for the Hillcrest Mausoleum Special Gifts Trust Fund was merely for accounting purposes so as to keep a separate record of the amount coming into such fund. To hold that the legislature in enacting section 18 did not intend to provide a method for a donor to bequeath special care funds in perpetuity would result in nullifying the powers therein expressed and would for all practical purposes render section 18 meaningless.

Under the fifth point, appellants contend that the Hillcrest Mausoleum Special Gifts Trust Fund and the income therefrom are managed in such a way that no accountability can be made to those persons having an interest in the funds, and for that reason the testatrix's bequest is wholly unenforceable. We find no merit in this contention.

It is not clear whether appellants are complaining about Republic's method of accounting or whether their complaint is the use made of the funds by the mausoleum. Any complaint of the accounting methods of the mausoleum would of course be wholly irrelevant and immaterial since the mausoleum is not a party to the suit.

Appellants' only complaint against Republic is that the accounting methods adopted by the trustee does not show the amount of income paid to the mausoleum from each donation to the Hillcrest Mausoleum Special Gifts Trust Fund.

At the time of trial, Republic was not the holder of any funds deposited in trust by appellants' testatrix. As we have heretofore held, appellants had a duty to remit the $40,000 bequest to Republic in accordance with the testatrix's will. We fail to see how Republic's accounting methods, even if same were subject to appellants' complaint, would amount to a defense, especially since up to this point none of the testatrix's funds were involved. In any event, the undisputed deposition testimony of Rebecca Terry, the bookkeeper for Hillcrest Memorial Cemetery, shows that Republic properly recorded the amount of income paid on each trust account.

■ This brings us to the cross-point brought by Republic complaining of the judgment on the ground that the court erred in limiting the prejudgment interest to six percent per annum rather than nine percent per annum.

Republic failed to call this matter to the trial court's attention by a motion to alter or modify the judgment. Since the complaint was not previously ruled upon, Rule 324 of the Texas Rules of Civil Procedure required appellee to present it in a motion for new trial. Inasmuch as appellee failed to file a motion for new trial, the point was not properly preserved for appellate review. *McLemore v. Johnston*, 585 S.W.2d 347, 349 (Tex.Civ.App.—Dallas 1979, no writ).

The judgment of the trial court is affirmed.