MOORE v. SELLERS, Atty. Gen. of Texas, et al.

No. 11552.

Court of Civil Appeals of Texas. San Antonio.

Feb. 19, 1947.

Rehearing Denied April 9, 1947.

 

J. B. Lewright, of San Antonio, for appellant.

Price Daniel, Atty. Gen., Joe R. Greenhill, of Austin, Trueheart, McMillan & Russell, of San Antonio, and William J. Fanning, of Austin, for appellees.

NORVELL, Justice.

The controlling question of this litigation is whether or not the "G. Bedell Moore Memorial Fund" is a charitable trust. The property involved is what is known as the Bedell building situated in San Antonio, Texas. By her will, Mrs. Elizabeth Moore provided that her son, G. Bedell Moore, the plaintiff below and appellant here, should take a life estate in the building, with remainder over to the Memorial Fund. Appellant's position is that he is the owner of the fee-simple estate, as the devise of the remainder to the Memorial Fund is void. This contention was asserted by way of trespass to try title against J. H. Savage, Guy S. McFarland and Chauncey H. Dunn, Jr., trustees of the "G. Bedell Moore Memorial Fund," and the Attorney General as the representative of the public. Judgment below was that appellant take nothing and the devise of the remainder in the Bedell building to the Memorial Fund was in all things upheld.

Mrs. Elizabeth Moore, the testatrix, died on November 23, 1925. Her will was duly probated in January of the following year. The will contained detailed instructions to trustees appointed by the will for the creation of a trust designated as the "G. Bedell Memorial Fund," and provided that said trustees should hold title to property as testamentary trustees until formation of said contemplated trust. Said trustees, in strict conformity with the will, adopted a Declaration of Trust on August 26, 1927. This declaration for the most part followed the exact wording of the will in outlining the purposes of the trust and the powers of the trustees thereof.

The stated purposes of the trust were, "to receive all grants, gifts or donations

that shall be made to it for its purposes, as hereinafter defined, and to hold, manage, invest and reinvest from time to time; the principal, interest, income, rents, revenues and profits arising therefrom, any or all, and to apply all of the net income, rents, revenues and profits for the benefit and/or support of any benevolent, charitable, religious or educational undertaking or organization, as hereinafter defined, but always in accordance with said last will and testament."

The Declaration of Trust, following the language of the will, provided that "the entire net annual income of said trust estate, * * * as it shall exist from time to time, shall be used and distributed for the following general purposes and uses, to-wit: to Protestant orphanages; for play grounds equipment; for Young Women's Christian Association work, national and local; for Young Men's Christian Association work, national and local; for Red Cross work; for general charity work through organized and well established societies or associations; for scholarships for worthy boys and girls, but upon these conditions and restrictions, to-wit: no scholarship shall exceed Five Hundred Dollars ($500.00) per annum, and every boy or girl enjoying any such scholarship shall obligate himself or herself, in writing, to pay back to said trustees, for the use and benefit of said trust estate, without interest, all money received by him or her, as soon as he or she shall be financially able so to do, and any and all repayments shall be used for like purposes."

The Declaration also provided that "subject always to the terms and provisions of the last will and testament of Elizabeth Moore, deceased, that said trustees, original and successor, shall always have the right, after first consulting with said two advisory trustees above named, or the survivor of them, to select those charitable, philanthropic, religious and/or educational institutions, societies, organizations or undertakings which, in the judgment of said trustees shall be most entitled to beneficial aid, but they shall exercise care not to discriminate in favor of any one institution, society, organization, undertaking, use or purpose, as against others equally worthy of aid, but said trustees shall at all times endeavor to equalize the distribution of such sum or sums along the lines hereinabove designated, as nearly as may be consistent with the most good, in the opinion of such trustees, original or successor, and with the terms and provisions of said last will and testament."

By the will and the Declaration of Trust, the trustees were vested with full power of management over the property of the trust, including the right to invest and re-invest the principal, interest, income, rents and revenues of the trust.

Mrs. Moore expressly declared in her will that, "It is my desire and I hereby direct and provide, that the charitable or benevolent Trust hereinabove created shall be perpetual and to that end the articles of association of said 'G. Bedell Moore Memorial Fund' shall distinctly stipulate and provide that the Trust therein created shall be perpetual."

A similar statement is contained in the Declaration of Trust adopted in accordance with the directions contained in the will.

■ We are of the opinion that the "G. Bedell Moore Memorial Fund" is a charitable trust and that the trial court was correct in sustaining its validity. Practically all of appellant's contentions as to the asserted illegality of the trust are answered by the recent cases of Powers v. First Nat. Bank of Corsicana, 138 Tex. 604, 161 S.W.2d 273, Id., Tex.Civ.App., 137 S.W.2d 839, and Boyd v. Frost Nat. Bank, Tex.Sup., 196 S.W.2d 497, Id., Tex.Civ. App., 188 S.W.2d 199. It would serve no useful purpose to reiterate what was said in the cases cited. We will notice briefly certain contentions of the parties.

■ The appellees, by cross-point, urge that the trust even if considered as a mixed trust, does not violate the rule against perpetuities. The argument is based upon the devolution and vesting of the legal estate, which takes place within a life in being, twenty-one years and nine months. As pointed out by Bogert, some confusion has arisen with reference to the

phrase "rule against perpetuities," in that it often is used to designate more than one restrictive rule. 2 Bogert, Trusts and Trustees, § 341, p. 1063. Here the vesting of the legal title does not offend against remoteness of the vesting of contingent interests, but the trust, if private or mixed, would violate the rule against undue postponement of direct enjoyment through a trust. This rule seems to be primarily of American origin, and it is well established in this State that perpetual trusts for other than charitable purposes are invalid. Powers v. First National Bank of Corsicana, 138 Tex. 604, 161 S.W.2d 273, 278; 1 Bogert, Trusts and Trustees, § 218, p. 670; 2 Bogert, Trusts and Trustees, § 352, p. 1079.

In support of his contention that the trust involved is a mixed trust and invalid because the trustees, without violating the terms of the will, could devote the property to private as well as charitable uses, appellant advances substantially the same argument as that sustained by the majority of the Supreme Court of Kansas in Troutman v. De Boissiere, 66 Kan. 1, 71 P. 286, 288, namely, that a charitable purpose or object "is one of such a character that it might be established by government itself, and be supported by taxation." Appellant insists that the test of a charitable purpose is whether, under our constitution and laws, such purpose may be supported by taxation, or the property of an organization established for such purpose is exempt from taxation under our constitution and laws.

In dissenting from the majority opinion in the Troutman case, Mr. Justice Cunningham said: "The taxation theory deserves praise for its novelty, at least, for it is certainly new. Its application would make void all gifts to churches, missionary societies, Bible societies, sectarian colleges, temperance societies, and many other objects which are now recognized everywhere as charitable. None of these are subject to public visitation or could be the beneficiary of a public tax."

In Power v. First Nat. Bank, 137 S.W.2d 839, 846, the Waco Court of Civil Appeals pointed out that, "The majority opinion in that case (Troutman v. De Boissiere) stands alone, except for the support which it received from Philadelphia v. Masonic Home, supra [160 Pa. 572, 28 A. 954, 23 L.R.A. 545, 40 Am.St.Rep. 736], which as above stated, was expressly disapproved by our own Supreme Court in City of Houston v. Scottish Rite Benevolent Association, supra (111 Tex. 191, 230 S.W. 978)."

In Texas the term "charitable purposes" as used in cases involving the application of the Texas constitutional proscription of perpetuities (Art. 1, § 26, Vernon's Ann.St.) is not restricted to objectives which may be supported by tax levies or encouraged by exemptions from taxation. The purposes for which taxes may be levied is controlled by various constitutional provisions. Article 8, § 2, of the Constitution relates to tax exemption, and because of the wording thereof it may be said generally that a particular use which would exempt property from taxation would be classified as a "charitable use" as that term is used in connection with the rule against perpetuities and monopolies; but it does not follow that it is essential to the validity of a perpetual trust, that its resources must be devoted exclusively to such uses as would render its property exempt from taxation.

In this State "charitable purposes include (a) the relief of poverty; (b) the advancement of education; (c) the advancement of religion; (d) the promotion of health; (e) governmental or municipal purposes; (f) other purposes the accomplishment of which is beneficial to the community." Boyd v. Frost Nat. Bank, Tex.Sup., 196 S.W.2d 497, 502; II Restatement, Trusts, 1140, § 368.

Each and all of the specifically stated purposes of the G. Bedell Moore Memorial Fund are charitable purposes. City of Houston v. Scottish Rite Benevolent Ass'n., 111 Tex. 191, 230 S.W. 978; Southern Methodist University v. Clayton, 142 Tex. 179, 176 S.W.2d 749; Lightfoot v. Poindexter, Tex.Civ.App., 199 S.W. 1152, 1165; Horn v. City of Minneapolis, 182

Minn. 172, 234 N.W. 289; Goodell v. Union Ass'n of Children's Home of Burlington County, 29 N.J.Eq. 32; State (Trustees of Young Men's Christian Ass'n Prosecutor) v. City of Paterson, 61 N.J.L. 420, 39 A. 655; Waddell v. Young Women's Christian Ass'n, 133 Ohio St. 601, 15 N.E.2d 140; 10 Am.Jur., 686, § 136; Ratto v. Nashville Trust Co., 178 Tenn. 457, 159 S.W.2d 88, 141 A.L.R. 341; Summers v. Chicago Title & Trust Co., 335 Ill. 564, 167 N.E. 777.

Mrs. Elizabeth Moore in her will provided for a perpetual trust which is valid only if created for "charitable purposes." She designated certain objectives and organizations which are charitable in nature and purpose. She used the words "charitable" and "charity" as controlling descriptive words in her directions relating to the trust. The conclusion is inescapable that her general overriding intention was to establish a trust for charitable purposes. 10 Am.Jur. 645, § 84. The use of the words "benevolent" and "philanthropic" along with the word "charitable" will not be construed as permitting the funds of the trust to be applied to a noncharitable purpose. Powers v. First Nat. Bank of Corsicana, 138 Tex. 604, 161 S.W.2d 273; Thorp v. Lund, 227 Mass. 474, 116 N.E. 946, Ann.Cas.1918B, 1204; Gossett v. Swinney, 8 Cir., 53 F.2d 772; In Re Dulles' Estate, 218 Pa. 162, 67 A. 49, 12 L.R.A.,N.S., 1177; 2 Bogert, Trusts and Trustees, § 370, p. 1132.

The judgment of the District Court is affirmed.