Thelma Marie ATKINSON et al., Appellants,

v.

Doris KETTLER et al., Appellees.

No. 16234.

Court of Civil Appeals of Texas.

Dallas.

Sept. 27, 1963.

Rehearing Denied Nov. 1, 1963.

Biggers, Baker, Lloyd & Carver, Arch A. Beasley, Locke, Purnell, Boren, Laney & Neely, Charles R. Johnson, Dallas, Waggoner Carr, Atty. Gen., J. S. Bracewell and Milton Richardson, Asst. Attys. Gen., Austin, for appellants.

William Andress, Jr., Carrington, Johnson & Stephens, Robert L. Blumenthal, Joe H. McCracken, III, and Robert E. White, Dallas, for appellees.

WILLIAMS, Justice.

Action for declaratory judgment and construction of trust provisions of the holographic will of Bernice E. Atkinson, deceased, relating to certain real property in Kinney County, Texas. (Art. 2524–1, Sec. 2, Vernon's Ann.Tex.St., and Art. 7425b–24, V.A.T.S.). Bernice E. Atkinson, a resident of California, died December 24th, 1959. Her handwritten will, dated May 8, 1959, was admitted to probate in a Superior Court of California on February 17th, 1960. Inasmuch as a portion of the will related to real property situated in Texas, the will together with the probate proceedings in California was filed for record in Kinney County, Texas. Sec. 96 et seq. Probate Code. Mercantile National Bank at Dallas was named in the will as Trustee and Executor. This suit was filed by Mercantile National Bank in which the District Court was asked to declare whether the provisions of the will, with respect to the real property located in Texas, were valid or whether they were void as being repugnant to the rule against perpetuities. In either event the Mercantile National Bank requested the Court to advise it as to the proper heirs and beneficiaries of Bernice E. Atkinson with respect to the disposition of the Texas property. Following a nonjury trial the Court decreed that the so-called ranch-trust provision of the will relating to the Texas property was entirely void as being contrary to the rule against perpetuities; that no residual trust was established by the will; and that title to the ranch property passed by intestate succession to the next of kin of the testatrix, her two daughters, who are appellees here.

From this judgment Thelma Marie Atkinson, The Salvation Army, and the State of Texas have perfected an appeal.

PRELIMINARY MOTIONS

Before undertaking a discussion of the points on appeal it becomes necessary for us to dispose of two motions by appellees. The first of said motions is one requesting us to strike certain portions of the statement of facts, it being contended that same do not constitute a proper portion of the record on appeal. We have carefully considered this motion and find the same to be without merit and the same is, accordingly, overruled.

■ By their second motion, appellees move this court to dismiss appellants' appeal as being moot, contending that subsequent to the entry of the judgment in the District Court, the Superior Court of the State of California for the County of Los Angeles has entered a judgment construing the will

in all respects contrary to the position taken by the appellants here and that, therefore, the California decision is res judicata of this appeal. Appellees argue that the effect of a foreign will on Texas real property is governed by Texas law, but that the meaning of the will must be decided by the domiciliary jurisdiction since the testatrix is presumed to have considered the law of her domicile at the time she executed her will. American Jurisprudence 481, "Conflict of Laws" Sections 174; 175; 79 A.L.R. 91; Zombro v. Moffett, 329 Mo. 137, 44 S.W.2d 149; Wilkins v. Allen, 18 How. 385, 59 U. S. 385, 15 L.Ed. 396. Without disagreeing with these authorities, appellees' plea of res judicata must be overruled for the simple reason that the judgment from a trial court in California decided subsequent to the rendition of the Texas judgment is not a final judgment binding upon us here. Appellants, in an unchallenged statement represent that the California decision is now on appeal to an Appellate Court there, accordingly it is not a final judgment which could be considered as res judicata. Texas Trunk R. R. Co. v. Jackson, 85 Tex. 605, 608, 22 S.W. 1030; Van Natta v. Van Natta, Tex.Civ.App., 200 S.W. 907.

## FACTS

Turning our attention to the merits of this appeal we find that the following facts are undisputed. Bernice E. Atkinson had been previously married to Lynn S. Atkinson, which marriage terminated in divorce December 8, 1951. Mrs. Atkinson died a feme sole, while a resident of California, on December 24, 1959, and, as hereinabove stated, her will dated May 8, 1959 was duly admitted to probate in California. Bernice E. Atkinson had two children, and only two children, during her lifetime, both of whom survived her, namely, Doris Marie Kettler and Jeanne Bernice Shaw. Katherine Jeanne Kettler is the daughter of Doris Marie Kettler and Lynn Elsa Fisher and Jeannie Lynn Shaw are the daughters of Jeanne Bernice Shaw. Lynn S. Atkinson, the divorced husband of Bernice E. Atkin-

son, died subsequent to the death of Bernice E. Atkinson. Thelma Marie Atkinson is the sister of Lynn S. Atkinson, deceased. Walter Wells Atkinson and Lynn Shirk Atkinson are the children of Thelma Marie Atkinson.

## THE WILL

The record reveals that no evidence was introduced before the trial court regarding the intent of the testatrix in connection with the questioned portions of the will and, therefore, in determining such intent the trial court certified that he construed the terms of the will by looking only to the language of the will itself. Accordingly, it is essential to set forth the relevant provisions of the will, as follows:

"Phoenix, Arizona. May 8, 1959
My Will—

I am en route to Dallas, Texas by car. I intended to make a will after I arrived there—But in case of my death before I have a chance to make a will—or if I decide to wait until my return to Los Angeles to have a lawyer make a will for me—I am writing this will now and mailing it to my sister-in-law Mrs. Thelma Marie Atkinson, 1522 North Orland, San Gabriel, California. I am in good health and of sound mind and nobody can duress me. (I sometimes can't spell) I want all of my financial assets placed in—Trust with the Mercantile National Bank of Dallas. I name the Mercantile National Bank at Dallas, as my sole executor.

\*   \*   \*   \*   \*   \*

My financial assets consist of 3566 Shares of Mercantile National Bank at Dallas. 60 Shares of First National Bank in Dallas. 110 Shares Merchants Discount Co., Winnsboro, Texas, 400 Shares of Revlon Inc. 200 Shares Texas Gulf Sulphur, 3500 in cash in Security First National Bank of Los Angeles, Larchmont Blvd., Branch. $10,891 in cash in my brokerage account—with E. F. Hutton and Com-

pany—Wilshire Branch Salesman Mr. Tod Barrington, 4155 Wilshire Blvd., Los Angeles 5. 7 Shares National Securities—a 3300 acre ranch 18 miles South of Del Rio, Texas—the ranch is in Kinney County, Texas.

(here follows list of liabilities)

"I want all my stock managed by the Trust. I want all income from my estate to be divided equally between (1) my daughter Mrs. Doris Marie Kettler, 3215 Cheviot Vista Place, Los Angeles 34, California. In case of my daughter Mrs. Doris Marie Kettler's death I want her share of the income to go to her daughter Katherine (or Catherine) Jeanne Kettler—divided equally with any other issue of Mrs. Doris Marie Kettler.

2. My second daughter Mrs. Jeanne Bernice Shaw, 13431 Willamette Drive, Westminister, California. And in case of Mrs. Jeanne Bernice Shaw's death— I want her share of the income to be divided equally between her two daughters Lynne Elsa Fisher and Jeannie Lynn Shaw and any other blood issue Jeanne Bernice Shaw may have.

3. My former husband Mr. Lynn S. Atkinson, 360 South Burnside Ave, Los Angeles 36, California, Apt. 12–E. In case of Mr. Atkinson's death I want his share of my income to go to his sister Mrs. Thelma Marie Atkinson, 1522 North Orland, San Gabriel, California. In case of Mrs. Thelma Marie Atkinson I want her share of my income to be divided equally between any direct blood issue heirs of mine still living.

I want my ranch (3300 acres) in Kinney County to be set up in a perpetual Trust. I specify that it must never be sold.

The income to be divided equally between my direct blood heirs as long as there is a blood heir of mine living—and Mr. Lynn S. Atkinson and his sister Mrs. Thelma Marie Atkinson as

long as they live—When the time comes that there are no blood heirs of mine from the issue of my own children— their children—I want the income from the ranch to be divided equally between any blood issue of

1. Walter Wells Atkinson, 1522 North Orland, San Gabriel, California and

2. Lynn Shirk Atkinson, 1522 North Orland, San Gabriel, California. The income is to be continued and divided between all direct blood issue of Lynn Shirk Atkinson and Walter Wells Atkinson until their direct blood issue has run completely out.

When the time comes that there is no direct blood issue living of my two daughters Doris M. Kettler and Jeanne Bernice Shaw and no remaining direct blood issue from Walter Wells Atkinson and Lynn Shirk Atkinson, I want the income from the ranch to go to the Salvation Army.

If the Salvation Army should be dissolved or disbanded—I want the ranch to be given to the State of Texas.

\*   \*   \*   \*   \*   \*

If any of my heirs attempt to break this will I cut them off with one dollar—I always knew what was best for them while I lived—and I still do. Any one attempting to break this will— must get one dollar.

Signed    Mrs. Bernice E. Atkinson,
          260 South Sycamore Ave.,
          Los Angeles 36, California

Phoenix, Arizona

May 8, 1959."

## OPINION

In briefs which can be characterized as exercises in intelligence, appellants advance six principal points of error. By these points appellants say that the trial court erred (1) in concluding that the only reasonable construction of the ranch-trust pro-

visions in the holographic will is that said trust is null and void; (2) by concluding, as a matter of law, that testatrix, in her use of the terms "direct blood heirs", "blood heir", "blood heirs", "issue", "blood issue" and "direct blood issue heirs" in each event referred to lineal descendants, and did not refer to "children"; (3) by concluding that the ranch-trust provisions of the will violate the rules against perpetuities; (4) by concluding that the ranch-trust provision of the will was not a charitable trust which was immune from the rule against perpetuities; (5) because even if the provision of the ranch-trust agreement was void, other provisions of the will were separable and should be given effect; and (6) because the will contained a valid residuary clause or trust disposing of Texas real property and such clause should be given effect even though the specific ranch-trust failed.

Inasmuch as appellants' first three points are interrelated, we will deal with these points collectively. In disposing of these points relating to the proper construction of the will we should take note of certain well established rules of law:

■■ 1. The cardinal rule of construction of wills is that the intent of the testator shall be first ascertained if it can legally or reasonably be done. 44 Tex.Jur. 680, Sec. 1004. If the will is unambiguous the testator's intention must be ascertained from the language used within the four corners of the will, unaffected by any assumption or inference based upon extraneous circumstances. 44 Tex.Jur. 686–7, 710; Foy v. Clemmons, Tex.Civ.App., 365 S.W. 2d 384, error ref. NRE.

■ 2. If the intention of the testator be not clearly expressed by the particular language used it may be found by looking to the provisions of the will as a whole and to the circumstances surrounding its execution. Guilliams v. Koonsman, 154 Tex. 401, 279 S.W.2d 579.

■ 3. Where an instrument is equally open to two constructions, the one will be accepted which renders it valid rather than void, it being assumed that the testator would intend to create a legal instrument rather than one which is illegal. Neely v. Brogden, Tex.Comm.App., 239 S.W. 192.

■ 4. A construction of a will which would render a decedent intestate as to any part of his estate is not favored in law and therefore a court will endeavor to adopt construction which will avert intestacy. 44 Tex.Jur. 148.

■ 5. A will should be construed, when possible, so as to render the instrument and all of its provisions consistent and harmonious. Accordingly, the court will attempt to reconcile conflicting, inconsistent and repugnant provisions of the will if it is possible to do so. If the provisions are so inconsistent or contradictory that all cannot be given effect, then such of them should be ignored and others given effect as seems most nearly to comport with the intention of the testator as gathered from the entire instrument. Thus principle and subordinate provisions should be construed in their due relation. 44 Tex.Jur. Secs. 150, 151.

Since the integrity of the will before us, and more especially the trust provision thereof relating to Texas real property, depend upon the question of whether the Texas law of perpetuities has been violated, we now look to such law and the rules relating to same by which we are governed.

The architects of the basic law of our State, The Constitution, in plain and unequivocal language proclaimed that perpetuities "are contrary to the genius of a free government, and shall never be allowed." Art. 1, Sec. 26, Vernon's Ann. Constitution of Texas.

■ Our Legislature has never seen fit to define the rule against perpetuities but our Supreme Court has repeatedly said that, as at common law, the rule against perpetuities is that no interest is good unless it must vest, if at all, not later than

twenty-one years after some life in being at the time of the creation of the interest, plus a period of gestation. Clarke v. Clarke, 121 Tex. 165, 46 S.W.2d 658; Brooker v. Brooker, 132 Tex. 27, 106 S.W. 2d 247; Henderson v. Moore, 144 Tex. 398, 190 S.W.2d 800; 45 Tex.Jur.2d p. 97, Sec. 2.

Certain landmark rules govern us in our determination of the validity of the trust provisions of the will:

■ 1. The rule against perpetuities, as stated by Chief Justice Alexander of the Supreme Court in Henderson v. Moore, 144 Tex. 398, 190 S.W.2d 800, "renders invalid any will which attempts to create any estate or future interest which by *possibility* may not become vested within a life or lives in being at the time of the testator's death and twenty-one years thereafter, and when necessary the period of gestation." (emphasis supplied) 41 Am.Jur. 50; 32 Tex.Jur. 834; Brooker v. Brooker, 130 Tex. 27, 106 S.W.2d 247; Neely v. Brogden, Tex.Comm. App., 239 S.W. 192; Bryson v. Connecticut Gen. Life Ins. Co., Tex.Civ.App., 196 S.W. 2d 532; Clarke v. Clarke, 121 Tex. 165, 46 S.W.2d 658.

■ 2. The rule against perpetuities deals with the vesting of title to an estate, not with the receiving of its profits. Anderson v. Menefee, Tex.Civ.App., 174 S.W. 904, err. ref. If title may not become vested or absolute in some person until the expiration of the greater period than that described by the rule, the disposition is ineffectual. West Texas Bank & Trust Co. v. Matlock, Tex.Comm.App., 212 S.W. 937. The word "vest" means to give an immediate, fixed right of present or future enjoyment, or an interest the ownership of which is not conditioned on survival. Hunt v. Carroll, Tex.Civ.App., 157 S.W.2d 429; Anderson v. Menefee, Tex.Civ.App., 174 S.W. 904, err. ref.

■ 3. The rule against perpetuities applies to trusts. Moore v. Sellers, Tex. Civ.App., 201 S.W.2d 248, err. ref. Unless the trust is for charitable purposes, a perpetual trust and trust for an indefinite duration are void. Munger v. Munger, Tex.Civ.App., 298 S.W. 2707, err. ref.; West Texas Bank & Trust Co. v. Matlock, Tex.Comm.App., 212 S.W. 936.

Being ever mindful of these guide posts, we have made a careful exegesis of testatrix's will to determine if her efforts to establish a perpetual trust relating to her Texas ranch property violate the basic law of our State. Appellants candidly concede that if Mrs. Atkinson, in the use of the terms "direct blood", "heirs", "blood heirs", "issue", "blood issue", and "direct blood issue" in describing the beneficial heirship of the remainder interest in the Texas ranch, meant her lineal descendants, as found by the trial court, and did not mean, by the use of such words "her children", then her effort to establish the ranch-trust did clearly violate the rule against perpetuities. They argue forcibly that since Mrs. Atkinson was not a lawyer that she should not be held to the technical meaning of the words used by her. They say that the word "issue" is an ambiguous word and that as used generally in the community it signifies the immediate descendants, or children. Newcomb v. Newcomb, 197 Ky. 801, 806, 248 S.W. 198; DeCherette v. DeCherette, 264 Ky. 525, 94 S.W. 1018.

■ While it is true that some courts have declared that the term "issue" is ambiguous it has been generally held that whether the testator meant children or lineal descendants by the use of the term depends upon the intention of the testator as derived from the context of the entire will. Palmer v. Horn, 84 N.Y. 516. This is illustrated in our Texas law by the case of Guilliams v. Koonsman, 154 Tex. 401, 279 S.W.2d 579 in which case the testator used the term "issue" interchangeable with the word "children" and the court said that under such circumstances it was permissible to construe the word "issue" to mean child or children. The rule seems well established in Texas that the term "issue" when used

in a will, is to be interpreted in its ordinary sense embracing all descendants, especially where there is nothing in the language of the instrument to show that a narrower interpretation was intended. Munger v. Munger, Tex.Civ.App., 298 S.W. 470.

Black's Law Dictionary, 4th Ed. defines the term "issue" as "descendants; or persons who have descended from a common ancestor; offspring; progeny; descent; lineage; lineal descendents; the word includes not only a child, or children, but all other descendants in whatever degree". In Restatement of the Law of Property, Secs. 265, 292a, it is stated that unless a contrary intent is found from other language or circumstance, the word "issue" means lineal descendants who are within the law of inheritance from such ancestor.

Many cases from various jurisdictions supporting this interpretation of the term "issue" and "blood heirs" are found in Vol. 22A of Words and Phrases, P.Ed., p. 553, et seq.

■ A study of the entire will reveals that Mrs. Atkinson used the term "daughter" on eight occasions, the term "granddaughter" on four occasions, and the word "children" was used only once. She used the term "issue", "blood issue", and "direct blood issue" nine times and she used the term "heirs" and "blood heirs" and "direct blood heirs" four separate times. In talking about her Texas ranch she confines herself to the terms "direct blood issue", "direct blood heirs" and "blood heirs" and "children". We think that in the disposing of the Texas ranch property she meant to include her lineal descendants and having done so it is our opinion that Mrs. Atkinson did not intend that the title to her ranch property should vest in the beneficiaries until more than the prohibited number of years following her death. Her bequests were to a class of persons which was subject to open to let in new born members, and to exclude all those who had died during the twenty-one year period.

Mrs. Atkinson was a person of firm opinion and clearly knew what she wanted done with her ranch property. This is evidenced in more than one portion of the will. In the very beginning she announced that she was "in good health and of sound mind and nobody can duress me". At the very end of her will she announces that "I always knew what was best for them while I lived—and I still do." Knowing what was "best for them", both while she was living and after she died, she then attempted to establish a "perpetual trust", specifying that the ranch shall never be sold. She then attempts to control the income from the ranch property from the grave by attempting to perpetuate this portion of her estate "as long as there is a blood heir of mine living" and until "their direct blood issue has run completely out". It is only then when "there are no remaining direct issue" that the ranch income is to go to the Salvation Army and if that organization should be dissolved or disbanded then, and only then, the ranch is to be given to the State of Texas. There can be no doubt of the existence of a possibility that the vesting of this estate will not take place for many years longer than the prohibited period condemned by the rule against perpetuities. Mrs. Atkinson clearly intended to remove the ranch property from commerce as long as there was a lineal descendant of hers still living. This being true then all other descendants than her grandchildren *might* not be born within twenty-one years.

■ Another reason is evident why the attempted ranch-trust cannot be given validity. The language "the income to be divided equally between my direct blood heirs as long as there is a blood heir of mine living—and Mr. Lynn S. Atkinson and his sister Mrs. Thelma Marie Atkinson as long as they live—" is clearly ambiguous for the reason that the division of the income between the parties named is not made clear or understandable. By this language it is not made definite whether she meant that "direct blood heirs" (her two daughters) should get an equal percentage of the in-

come with Lynn Atkinson and his sister, or whether she meant that her "blood heirs" and Lynn Atkinson and Thelma Marie Atkinson would share *per capita*. In any event the share of each would change from time to time as "blood heirs" died and others were born.

The terms of the testatrix's will demonstrate a clear desire to control the Texas ranch property forever and from beyond the grave. Her intent runs counter to the basic law of our land and must not prevail. Appellants' first three points are overruled.

■ In their fourth point appellants contend that the ranch-trust creates a charitable trust in favor of the Salvation Army and therefore such trust is immune from the rule against perpetuities. It is undisputed that a perpetual trust may legally be created for charitable purposes. Moore v. Sellers, Tex.Civ.App., 201 S.W.2d 348; Restatement of the Law of Property, Sec. 398, 11 Tex.Jur.2d 698. Appellants are also correct when they state the rule that a gift to charity which is preceded by a gift given in trust for non-charitable purposes will be upheld if, and only if, the gift to charity must vest, if at all, within the period of the rule against perpetuities. Scott on Trust, 2d Ed. Vol. 4, Sec. 401.7, p. 2879.

However, as above stated in connection with our disposition of points one, two and three, the title to the charity might not vest within the rule against perpetuities. We think the question here is settled by the rule announced in Restatement of the Law of Property, Sec. 396 as follows:

"The fact that a limitation or reservation is in favor of charity in no way obviates an invalidity of such limitation or reservation which, if it were a limitation or reservation not in favor of a charity, would exist under the rule against perpetuities * * .* ".

Illustration 2 under this rule is directly in point wherein it is demonstrated that an attempted remainder is subject to a condition precedent not certain of being fulfilled,

the charitable character of the remainder does not obviate the invalidity.

■ Applying the rule to the facts of this case the attempted remainder to the Salvation Army is subject to the condition precedent which is not certain of being fulfilled, if ever. Appellants' fourth point is overruled.

By her fifth point Thelma Marie Atkinson, asserts that even if the ranch-trust be held void because of the rule against perpetuities, her vested life estate within the ranch-trust is separable and should be given full effect.

■ When the entire ranch-trust provisions of Mrs. Atkinson's will are considered as a whole it cannot be logically concluded that she intended for Mrs. Thelma Marie Atkinson's life estate be separate and independent from the other life estates therein created. As evidence it should be noted that the testatrix desired her income from her ranch property to be divided equally between those named. The "perpetual trust" desired by her was to constitute one unit for the benefit of the named beneficiaries. There is no indication of her willingness or desire that any one of the beneficiaries were to be favored over the other, or that there could be severability of the various income units. Nothing is found in the language of testatrix to justify a separation of interest and therefore since the entire ranch-trust must fall, the interest of Mrs. Thelma Marie Atkinson must likewise fall in-so-far as it relates to this particular trust. Anderson v. Menefee, Tex. Civ.App., 174 S.W. 905, wr. ref.

■ We turn now to a consideration of Mrs. Thelma Marie Atkinson's sixth point of error wherein she contends that in the event we should hold that the ranch-trust fails then she should be allowed to recover a one-third life estate interest in the income of the Texas ranch property under the terms of the original trust contained in the will. We sustain this point.

The clear and manifest intent of the testatrix is revealed in the first portions of her will wherein she states that she wants all of her financial assets placed in trust with the Mercantile National Bank at Dallas. She then carefully, and in detail, lists her financial assets which include shares of stock, money on deposit, and the Texas ranch. Having established the trust she then states clearly, and in detail, those persons whom she desires to receive the income from such trust. Unlike the abortive ranch-trust which we have heretofore stricken, she is certain as to the division of the income from this trust. She positively states that she wants all income from her estate to be divided equally between (1) her daughter Doris Marie Kettler, and in the event of her death, to her daughter Katherine Jeanne Kettler, "divided equally with any other issue of Mrs. Doris Marie Kettler"; (2) her second daughter, Mrs. Jeanne Bernice Shaw, and in case of her death, to be divided equally between her two daughters, and "any other blood issue Jeanne Bernice Shaw may have"; (3) her former husband, Mr. Lynn S. Atkinson, and in case of his death, his share of her income to go to his sister, Mrs. Thelma Marie Atkinson, and in case of her death:[1] "I want her share of my income to be divided .equally between any direct blood issue heirs of mine still living."

There can be but one meaning gained from a careful study of this portion of testatrix's will. She clearly says that she wants to establish a trust whereby all of the income of all of her property is to be divided into three equal parts and to be given to the specific and natural objects of her bounty, namely, her two daughters and her former husband and, in the event of his death, to his sister, Mrs. Thelma Marie Atkinson. She thinks also of her daugh-

ter's children, her grandchildren, but specifically states that upon Mrs. Thelma Marie Atkinson's death then such one-third income is to revert and be divided equally between any direct blood issue heirs of hers (the testatrix) that still live.

While all parties to this appeal designate this trust as a "residue trust" or a residual clause, we are not inclined to look upon it as such. Neither do we think it important as to what the trust is called but if it needs a name, we would tend to designate it a "General Trust".

In order for us to uphold the validity of this General Trust it becomes necessary for us to examine each separate life estate provided for therein and determine whether same is valid.

■ Insofar as the life estate of Mrs. Thelma Marie Atkinson is concerned we hold it to be clearly valid and not repugnant to the rule against perpetuities. This is obvious because upon Mrs. Thelma Marie Atkinson's death her life estate share of the income will then be divided equally between any direct blood issue heirs of the testatrix "still living". (emphasis ours). This provision completely eliminates any question concerning invalid remoteness.

■ However, when we consider the two separate life estates to the two daughters of testatrix we find that in each instance, after naming the daughter and grandchild or grandchildren, the testatrix then provides a division with "any other issue" and "any other blood issue". In these instances, as in those heretofore discussed by us in connection with the ranch-trust provision, it is our opinion that the testatrix intended by the use of the term "issue" to mean lineal descendants rather

---

[1] In the original draft of the will it is to be observed that testatrix inadvertently omitted the word "death" following the name of Mrs. Thelma Marie Atkinson. We have supplied the word "death" to fulfill the meaning of testatrix. It is well settled that the court may supply or reject words, or indulge in certain implications or inferences, when necessary, to effectuate the manifest intention of the testator. 44 Tex.Jur. 724; Jackson v. Evans, Tex.Civ.App.. 305 S.W.2d 236. Moreover, the parties themselves agree that the word may be supplied.

than children. Accordingly, for the same reason and by virtue of the same authority cited in connection with our disposition of the ranch-trust provisions we hold that insofar as the testatrix intended to create a trust for the benefit of any others than her daughter or daughters and her grandchild, or grandchildren, such intention is void as being repugnant to the rule against perpetuities.

■ However, again reverting to the true intention of the testatrix, we believe that the validity of the life estate interests of the two daughters and their children may be sustained by the application of a well-established principle of law and construction. This rule is that a remainder which is void because in violation of the rule against perpetuities does not necessarily render invalid the prior estate, but that the latter will be sustained, notwithstanding the invalidity of the ulterior estate, when the two are not inseparable and dependent upon the general testamentary scheme, and to uphold the one without the other would not defeat the primary or dominant purpose of the testator. This rule has been applied almost universally. See cases in 28 A.L.R. 382, 75 A.L.R. 124 and 128 A.L.R. 323.

The rule has been aptly stated in Woodruff Oil & Fertilizer Co. v. Yarborough's Estate, 144 S.C. 18, 142 S.E. 50, as follows:

"In cases of this kind, where the ulterior provision is void for remoteness, the primary provision may or may not be so related thereto that it must fall with the fall of the ulterior provision. If the two be so interwoven with, so interdependent upon, each other they together constitute one scheme and cannot be separated, then if the ulterior provision be void the primary provision must also fall. But if they may be separated, if the existence of the ulterior provision is not necessary to the existence of the primary provision, if the primary provision subserves a purpose of its own, which it could and would serve if the ulterior provision

had not been made, and not created merely to support the ulterior provision, then, if the ulterior provision be void, the primary provision is good and should be sustained unless it itself offends against the rule."

See also Gray, The Rule against Perpetuities, Secs. 247, 248; Restatement of the Law, Property, Division IV, Secs. 402 and 403; 41 Am.Jur. Sec. 57, p. 100; 70 C.J.S. Perpetuities § 22, pp. 602–603; Restatement of the Law Property, Sec. 402.

■ Applying this well-established rule of law to these trust provisions relating to that part of the estate the testatrix desires to go to her daughters and their children, we believe the testatrix clearly intended to carry out a general purpose, that is to provide for her children and their children, primarily, and this being a dominant provision the same may be separated from the ulterior provision relating to anyone else and which might be void for remoteness. There appears to be no question but that the testatrix intended that her children and grandchildren be given the benefit of the respective portions of her income therein provided.

No doubt exists that had the testatrix known of the invalidity of the remote grant attempted by her that she would not want her wishes defeated relating to her daughters and their children. Moreover, the construction based upon this provision by us cannot result in any injustice because of the evident intent of the testatrix to provide for the three named classes of people, and especially the natural objects of her bounty.

Accordingly, we hold that the life estate in one-third of the Texas ranch property to Mrs. Doris Marie Kettler, with the remainder in fee to her children, and the similar life estate to one-third of the Texas ranch property to Mrs. Jeanne Bernice Shaw, with the remainder in fee to her children, is valid.

■■ We cannot agree with appellees that this General Trust is void because

there is no provision therein for termination or final disposition of the property. While it is true that there is no specific gift over of the corpus of the estate provided for by testatrix, the law will presume that the testatrix intended the gift of the corpus to follow the gift of the income. As stated in 96 C.J.S. Wills § 785, p. 198; "A gift of the interest, income, or product of a fund, or property, without limit as to time, and without disposition of corpus, will pass the fund or property itself, regardless of whether the bequest is direct to the beneficiary or through a trustee, * * *". See also the rule in 57 Am.Jur. Sec. 1196, p. 786.

A similar question was presented to this court in Munger v. Munger, Tex.Civ.App., 298 S.W. 470 and in denying the contention in that case Justice Looney said: "We are of the opinion, as indicated above, that the trust will end definitely at the death of the last of the daughters of the testator to die, and, on such occurrence, the corpus of the estate not theretofore vested, at the death of the daughters leaving issue, will immediately vest in the several issues of the several daughters."

From what we have said, we construe the general trust provisions of Mrs. Atkinson's will as follows:.

1.   A life estate in one-third of the Texas real property to Doris Marie Kettler, with the remainder in fee to the children of Doris Marie Kettler;

2.   A life estate in one-third of the Texas real property to Jeanne Bernice Shaw, with the remainder in fee to the children of Jeanne Bernice Shaw;

3.   A life estate in one-third of the Texas real property to Thelma Marie Atkinson, with the remainder in fee to the children of Doris Marie Kettler and Jeanne Bernice Shaw.

All points raised by appellants, Salvation Army, and the State of Texas, have been carefully considered and overruled.

The judgment of the trial court holding that the provisions of the Ranch-Trust contained in Mrs. Atkinson's will are void as against the rule of perpetuities, is affirmed. That part of the trial court's judgment which decrees that Mrs. Bernice E. Atkinson died intestate so far as her real property situated within the State of Texas is concerned, and the subject property should go to the next of kin of Mrs. Atkinson under Texas laws of descent and distribution, is reversed and here rendered that such Texas real property falls within the general trust provisions of the will of Mrs. Atkinson and the title thereto is vested as above described. The costs of this appeal are taxes against appellees.

Affirmed in part and reversed and rendered in part.