Clinton **FOSHEE** et al., Petitioners,

v.

**REPUBLIC NATIONAL BANK OF DALLAS, Trustee et al., Respondents.**

No. B–9619.

Supreme Court of Texas,
Twelfth District.

Feb. 25, 1981.

Rehearing Denied March 25, 1981.

---

**676**

Carter, Jones, Magee, Rudberg, Moss & Mayes, Robert H. Bezucha, Dallas, for petitioners.

Turner, Rodgers, Sailers, Jordan & Calloway, Bruce W. Bowman, Jr., and Mark White, Atty. Gen., Amie Rodnick, Asst. Atty. Gen., Austin, for respondents.

WALLACE, Justice.

This is an appeal from a judgment of the court of civil appeals which affirmed a summary judgment for respondents. Petitioners Clinton and Mary Foshee (Foshee) are the Independent Executors of the Will of Bernice Schlosberg. Respondent, Republic National Bank of Dallas, (Republic) is Trustee of the Hillcrest Mausoleum Special Gifts Trust Fund and also the Trustee of the Hillcrest Mausoleum Perpetual Care Fund. The Attorney General is a respondent because a charitable trust is alleged to be involved.[1]

The issue before us is whether a portion of Mrs. Schlosberg's Will which bequeathed $40,000 to the Hillcrest Mausoleum Special Gifts Fund violated the rule against perpetuities.

At the time of her death Mrs. Schlosberg owned a room containing five crypts at Hillcrest Mausoleum. She left a Will which provided in part:

> I give, devise and bequeath the sum of Forty Thousand Dollars ($40,000.00) in cash to Republic National Bank of Dallas, Texas, in trust, as Trustee of that certain Trust created on May 19, 1948, by and between Hillcrest Mausoleum, Inc. and Republic National Bank of Dallas, known as "Hillcrest Mausoleum special Gifts Trust Fund," such sum to become a part

---

1. Tex.Rev.Civ.Stat.Ann. art. 4412a (1976). All references are to Vernon's Annotated Texas Civil Statutes unless otherwise indicated.

of said Trust Fund and to be administered in perpetuity as a part thereof and under the terms and provisions of said Trust indenture. I direct that the entire income, or the maximum amount of such income that is permitted under the laws of the State of Texas, from this gift, be expended for keeping, beautifying, and for the purchase of flowers for the burial space of my mother Sallie Alwida Schlosberg, my brother Sylvan S. Schlosberg and myself in the room which I own in Hillcrest Mausoleum. I further direct that flowers be purchased from this income and placed in, on or around said room weekly or at least semi-monthly depending upon the amount of income available for such purpose. The remainder of such income, if any, after expending the maximum amount allowed by the laws of this state for the purpose aforesaid shall be devoted to and spent for the general upkeep and beautification of the entire Mausoleum.

Republic made demand on Foshee as executor of the Will to make payments to it of the $40,000. Foshee refused, contending that the bequest was in violation of the rule against perpetuities and void. Republic filed suit and both parties moved for summary judgment. Foshee's motion was denied and Republic's was granted. The court of civil appeals affirmed. 600 S.W.2d 358. We reverse and render in part and remand in part.

Article I, section 26 of the Texas Constitution provides that "[p]erpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed . . . ."

■ It is settled law in this State that the rule against perpetuities renders invalid any will which attempts to create any estate or future interest which by any possibility may not become vested within a life or lives in being at the time of the testator's death and twenty-one years thereafter, and when necessary the period of gestation. *Kettler v. Atkinson*, 383 S.W.2d 557, 560 (Tex.1964), quoting *Henderson v. Moore*, 144 Tex. 398, 190 S.W.2d 800, 801 (1946). It

is likewise settled law that the rule against perpetuities also applies to trusts, and a perpetual trust of indefinite duration is void. *Moore v. Sellers*, 201 S.W.2d 248, 251 (Tex.Civ.App. San Antonio 1947, writ ref'd); *Carr v. Jones*, 403 S.W.2d 181, 182 (Tex.Civ. App. Houston 1966, writ ref'd n.r.e.); *Atkinson v. Kettler*, 372 S.W.2d 704, 711 (Tex. Civ.App. Dallas 1963), *aff'd*, 383 S.W.2d 557 (Tex.1964). If, however, the trust is established for charitable purposes, the constitutional inhibition against perpetuities does not apply. *Boyd v. Frost National Bank*, 145 Tex. 206, 196 S.W.2d 497, 505 (1946); *Atkinson v. Kettler*, 372 S.W.2d 704, 713 (Tex.Civ.App. Dallas 1963), *aff'd*, 383 S.W.2d 557 (1964); *Rissman v. Lanning*, 276 S.W.2d 356, 358 (Tex.Civ.App. Austin 1955, no writ). Generally, a perpetual trust for the upkeep of a private burial plot is not considered to be for charitable purposes. *See McIlvain v. Hockaday*, 36 Tex.Civ.App. 1, 81 S.W. 54 (1904, writ ref'd); Annot., 47 A.L.R.2d 596 (1956); G. Bogert, The Law of Trusts and Trustees § 377 (1977); Reinstatement (Second) of Trusts § 374 Comment h (1959). In the absence of a statute declaring such trusts to be charitable in nature, such trusts are generally held to be void and unenforceable. *See* Bogert, *supra.*

The court of civil appeals held that Article 912a, Sections 15 and 18 are *pari materia* and should be taken and construed together to carry out the legislative intent. Further, that when so construed those sections reveal an intention by the Legislature to define the special care fund referred to in Section 18 as a charity.

Section 15, entitled "Establishment and Maintenance of Perpetual Care," authorizes the establishment and maintenance of a perpetual care fund. It provides that the income only can be used for the general perpetual care of the cemetery; that the principal of such fund for perpetual care shall never be voluntarily reduced, but shall remain inviolable and shall forever be maintained separate and distinct by the trustee or trustees from all other funds; and that all contributions to the fund shall be deemed for charitable and eleemosynary purposes.

Section 18, entitled "Special Care," permits in paragraph one, the trustee of a perpetual care cemetery to also take property given in trust and apply the principal, or proceeds, or income for the special care or ornamenting of any burial plot, lot, section or building. This section further provides that no more than 75% of the proceeds or income from such funds shall be devoted to keeping up or beautifying private blocks, lots or structures and 25% of such proceeds or income shall be devoted to the general upkeep and beautifying of the cemetery. This paragraph contains no language suggesting that the special care fund with which it deals should not be considered a perpetuity.

The second paragraph of Section 18 permits a non-perpetual care cemetery to maintain a special care fund. It requires that at least 25% of the proceeds or income from the fund be used for general cemetery upkeep and that the fund shall not be regarded or held to be a perpetuity.

The court of civil appeals reasoned that since Republic was Trustee for both the Hillcrest Mausoleum Perpetual Care Fund and the Hillcrest Mausoleum Special Gifts Trust Fund; and since both the Will and special care indenture showed that the parties were endeavoring to comply with the Cemetery Act; and since both Sections 15 and 18 deal with perpetual care funds and should be considered in *pari materia* ; therefore, the special care funds became perpetual care funds when they reached Republic, the common trustee.

We reject this reasoning. It disregards the clear distinction between Sections 15 and 18 of the Act. Section 15 deals exclusively with perpetual care funds and Section 18, paragraph one, the paragraph we are concerned with, deals only with special care funds. The only reference in paragraph one of Section 18 to perpetual care is in identification of the common trustee. The principal of the perpetual care fund may not be voluntarily reduced while the principal of the special care fund may be used. The income of the perpetual care fund can be used only for general perpetual

care of the cemetery while the primary reason for creating the special care fund is beautification and upkeep of private blocks, lots and structures. Also, the Legislature saw fit to specifically provide that the perpetual care fund of a perpetual care cemetery and the special gift fund of a non-perpetual care cemetery were not to be deemed as perpetuities, yet the Legislature gave no indication that it considered the special care fund of a perpetual care cemetery as charitable or eleemosynary.

Section 18 of the Cemetery Act specifically permits the trustee of a special gift trust fund of a perpetual care cemetery to expend the principal of the fund. This is further indication that this section is not an attempt to enlarge the common law definition of "charity" to include such fund, as is contended by Republic and found by the court of civil appeals. In view of this holding we do not reach the question of whether the Legislature has such authority.

■ The Will of Mrs. Schlosberg and the trust indenture of the Hillcrest Mausoleum Special Gifts Fund could have been drawn to comply with the Cemetery Act and not violated the Constitution, but they were not so drawn and are thus in violation of the rule against perpetuities.

■ Republic contends that should we find the bequest of Mrs. Schlosberg to be void then we should invoke the doctrine of *cy-pres* and rewrite the bequest so that the money will go for charitable purposes and thus carry out the intent of Mrs. Schlosberg. The prerequisites necessary to invoke the doctrine of *cy-pres* are (1) a general charitable intent on the part of the testator or donor, and (2) a specific charitable purpose which has failed. *Women's Christian Temperance Union of El Paso v. Cooley*, 25 S.W.2d 171 (Tex.Civ.App. El Paso 1930, writ ref'd); *Scott v. Sterrett*, 234 S.W.2d 917 (Tex.Civ.App. Dallas 1950, writ ref'd n.r.e.). The express intent of Mrs. Schlosberg was to beautify the private burial plots of herself, her mother and her brother. This is not a charitable purpose, so no specific charitable purpose was ever contemplated. The doctrine of *cy-pres* is not applicable to this

case, and the bequest for upkeep of the private burial plot fails. Article 1291b requires us to liberally construe the statute to invoke the doctrine of *cy pres* when we have ascertained a general intent to create a charitable trust. Since we have found no such general intent the statute has no application here.

If it is not the primary purpose of the settlor to apply the property to charitable objects, but the maximum amount which would be required for the accomplishment of the non-charitable objects can be ascertained, the trust fails only as to the amount so required and the charitable trust of the balance is valid.

Restatement (Second) of Trusts § 398(3).

■ The trial court proceeding was a hearing on motions for summary judgment by both parties so the evidence was not fully developed. By reference to Art. 912a–18 it can be ascertained that at least 75% of the income was to be spent for the non-charitable purpose. However, the intent of the testatrix as to whether any of the funds were to be spent for general upkeep of the cemetery is in doubt. She stated that *the entire income*, or the maximum amount permitted under the laws of the State of Texas, was to be spent on private crypts. Also, she stated that the remainder of the income, *if any*, after expending the maximum amount allowed by the laws of this State for the purposes aforesaid, shall be spent for general upkeep of the cemetery. Her intent as to any moneys to be spent for any purpose other than the private trust is thus vague and ambiguous. The interpretation of a vague or ambiguous document is a question of fact. *Moss v. Helsley*, 60 Tex. 426, 438 (1883); *Mercantile Nat'l Bank at Dallas v. National Cancer Research Foundation*, 488 S.W.2d 605, 608 (Tex.Civ.App.1972, writ ref'd n.r.e.). We are unable to hold that the remaining 25% of the bequest was allocated for a charitable purpose as a matter of law. To so hold would require a determination by this Court that the Will

on its face clearly showed that the testatrix intended that 25% of her bequest would still be expended for the upkeep of the entire cemetery despite the fact that all of the funds that she intended to be used for the maintenance of her private burial plot in that same cemetery will no longer be used for that purpose. Therefore this cause must be remanded to the trial court to determine the intent of the testatrix as to the disposition of the remaining 25% of the bequest.

The judgment of the court of civil appeals is reversed. Seventy-five percent of the bequest or $30,000 fails. The cause is remanded to the trial court to determine the intent of the testatrix as to the remaining 25% or $10,000.

Dissenting opinion by BARROW, J., in which POPE, J., joins.

GREENHILL, C. J., not sitting.

BARROW, Justice, dissenting.

I respectfully dissent to the rendition of a take-nothing judgment in this cause. I would hold that the will of Mrs. Schlosberg sets up a "mixed trust"[1] and, under settled rules applicable thereto, we should carry out her testamentary intent by upholding the charitable element of the trust providing for upkeep of the entire mausoleum.

I agree with the holding of the Court that a perpetual trust for the upkeep of a *private* burial plot is not considered to be for charitable purposes, and therefore the constitutional inhibition against perpetuities prohibits the enforcement of such a trust. However, the constitutional inhibition against perpetuities does not apply if the trust is established for charitable purposes. See: *Boyd v. Frost Nat. Bank*, 145 Tex. 206, 196 S.W.2d 497 (Tex.1946); *Atkinson v. Kettler*, 372 S.W.2d 704 (Tex.Civ.App.— Dallas 1963), *aff'd* 383 S.W.2d 557 (1964); *Rice v. Morris*, 541 S.W.2d 627 (Tex.Civ. App.—Corpus Christi 1976, writ dism'd by agr.). As a general rule, a trust for the

---

1. A "mixed trust" is one which possesses private and public elements and is partly charitable and partly for the benefit of private individuals or non-charitable objects. *Rice v. Morris*, 541 S.W.2d 627, 631 (Tex.Civ.App.—Corpus Christi 1976, writ dism'd by agr.).

maintenance of a *public* cemetery is charitable. Restatement (Second) of Trusts § 374, Comment h (1959); G. Bogert, The Law of Trusts and Trustees § 377 (2nd ed. 1977). Mrs. Schlosberg clearly provided that any trust funds which could not be legally spent for the upkeep of her private crypt should be devoted to the charitable purpose of upkeeping the mausoleum as a whole.

Article 912a–15,[2] expressly authorizes a trust for a public cemetery and exempts it from the rule against perpetuities. This legislative designation of a perpetual care trust is consistent with the holdings of Texas courts that "charitable purposes" include purposes the accomplishment of which would be beneficial to the community. *See: Boyd v. Frost Nat. Bank, supra; Powers v. First Nat. Bank of Corsicana*, 138 Tex. 604, 161 S.W.2d 273 (1942); *Moore v. Sellers*, 201 S.W.2d 248 (Tex.Civ.App.—San Antonio 1947, writ ref'd).

I therefore agree that the constitutional prohibition against perpetuities prevents a perpetual care trust being established for the maintenance of a private burial plot. It is the result that the Court achieves in applying the rule against perpetuities to this particular trust that I disagree with. The Court appears to ignore the basic rule of will construction which requires us to determine the testatrix's intent and to effectuate that intent insofar as is legally possible. *Sellers v. Powers*, 426 S.W.2d 533 (Tex.1968).

The will of Mrs. Schlosberg, which was originally drawn in its present form by petitioner Foshee in his capacity as attorney for Mrs. Schlosberg, provides for a "mixed trust" in that it provides for both private and charitable purposes. The will provides in part:

I give, devise and bequeath the sum of Forty Thousand Dollars ($40,000.00) in cash to Republic National Bank of Dallas, Texas, in trust, as Trustee of that certain Trust created on May 19, 1948, by and between Hillcrest Mausoleum, Inc. and Republic National Bank of Dallas, known as "Hillcrest Mausoleum Special Gift Trust Fund," such sum to become a part of said Trust Fund and to be administered in perpetuity as a part thereof and under the terms and provisions of said Trust indenture. I direct that the entire income, *or the maximum amount of such income that is permitted under the laws of the State of Texas*, from this gift, be expended for keeping, beautifying, and for the purchase of flowers for the burial space of my mother Sallie Alwida Schlosberg, my brother Sylvan S. Schlosberg and myself in the room which I own in Hillcrest Mausoleum. I further direct that flowers be purchased from this income and placed in, on or around said room weekly or at least semi-monthly depending upon the amount of income available for such purpose. *The remainder of such income, if any, after expending the maximum amount allowed by the laws of this state for the purpose aforesaid shall be devoted to and spent for the general upkeep and beautification of the entire Mausoleum.* (Emphasis added.)

The summary judgment record establishes that attorney Foshee attempted to draw this provision of the will to conform to Article 912a–18, which authorizes a special care trust fund for upkeep of a private crypt. The statute requires that a minimum of 25 percent of the proceeds or income from a "special care trust fund" be devoted to the general upkeep and beautification of the entire cemetery. This minimum requirement is for a charitable public purpose and, therefore, does not violate the rule against perpetuities. Mrs. Schlosberg's will, although directing that as much as was legally possible be spent for the upkeep of her private crypt, expressly provides that all other income be expended for the general upkeep of the entire mausoleum. It would totally defeat her expressed intent if this income devoted in the will for upkeep of the entire mausoleum should revert under the residuary clause to Foshee or his family.

---

**2.** All statutory references are to Texas Revised Civil Statutes Annotated.

Under settled rules applicable to a "mixed trust," the funds legally set aside for the charitable purpose should be upheld. This precise question was considered in the commentary to Section 398 of the Restatement (Second) of Trusts at page 295 where it is stated:

Thus, if a testator bequeaths a large sum of money in trust to apply a part of the income in keeping the testator's grave in repair, and to apply the balance of the income for charitable purposes and the intended trust for the repair of the grave is invalid as a perpetuity (see § 124), the court will determine the sum necessary to yield an income sufficient to care for the grave, and the trust as to so much of the principal sum will be held invalid, *but the charitable trust of the balance will be upheld.* (Emphasis added.)

*See also*: 4 Scott on Trusts § 399.2, at 3095 (3rd ed. 1967).

The holding in *Carr v. Jones,* 403 S.W.2d 181 (Tex.Civ.App.—Houston 1966, writ ref'd, n.r.e.), is distinguishable. There the entire trust failed because the charitable and non-charitable purposes were mingled and the amount to be expended for specific charitable purposes could not be ascertained. The clear import of this holding is that there would have been a contrary result if the will in question had given directions as to the amount of money to be spent on the charitable purpose. *See: Rice v. Morris, supra.* Because the will of Mrs. Schlosberg tracks the language of Art. 912a, section 18, it is apparent that she intended by this provision that at least 25 percent of the trust be spent for the charitable purpose of upkeeping the entire mausoleum.

The legislature has enacted Article 1291b to take care of the exact situation presented here. This statute provides:

Section 1. Any interest in real or personal property that would violate the Rule Against Perpetuities shall be reformed, or construed, within the limits of that Rule, to give effect to the general intent of the creator of that interest whenever that general intent can be as- certained. This provision shall be liberally construed and applied to validate such interest to the fullest extent consistent with such ascertained intent.

Sec. 2. To effectuate the provisions hereof, all courts of this state are, within their otherwise jurisdictional limits, hereby granted the power to reform or construe interests in real or personal property, as provided in Section 1 hereof, in accordance with the doctrine of cy pres.

Sec. 3. If an instrument violates the Rule Against Perpetuities, but it can be reformed or construed in accordance with the provisions of this Act, it shall not be declared totally invalid. Rather, the provisions thereof that do not offend the Rule shall be enforced, and only the provisions thereof that do violate, or might violate, the Rule shall be subject to reformation or construction under the doctrine of cy pres within the terms of this Act.

Sec. 4. This Act shall apply only to inter vivos instruments and wills taking effect after the Act becomes effective, and to appointments made after the Act becomes effective, including appointments by inter vivos instruments or wills under powers created before the Act becomes effective. The Act shall apply to both legal and equitable interests. (Effective September 1, 1969)

The clear purpose of the statute is to require a court to reform the bequest to give effect to the general intent of the testatrix. The will of Mrs. Schlosberg provides that any income remaining after expending the maximum allowed by law on her specific crypt should be spent for the general upkeep of the entire mausoleum. We should carry out the expressed testamentary intent of Mrs. Schlosberg by providing that the funds which could not be legally spent for her private purpose should be devoted to the charitable purpose of providing upkeep for the mausoleum as a whole. *In Re Fletcher's Estate,* 280 N.Y. 86, 19 N.E.2d 794 (1939). This charitable purpose does not violate the constitutional prohibition against perpetuities.

I would affirm the judgments of the courts below.

POPE, J., joins in this dissenting opinion.